THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DALE A. ENGLISH, Defendant-Appellant.

Third District    No. 3—95—0406

Opinion filed April 30, 1997.

Thomas A. Karalis, of State Appellate Defender's Office, of Ottawa, and Ronald E. Boyer, of Boyer & Thompson, Ltd., of Watseka, for appellant.

Ted J. Hamer, State's Attorney, of Cambridge (John X. Breslin and Do-

menica Osterberger, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE LYTTON delivered the opinion of the court:

The defendant, Dale A. English, was convicted of burglary and aggravated battery. 720 ILCS 5/19—1, 12—4 (West 1994). He was sentenced to a 30-month term of probation for the offenses which was conditioned on his serving six months of imprisonment. On appeal, the defendant argues that: (1) he was not proved guilty of burglary beyond a reasonable doubt; (2) the trial court erred in commenting on photographs in evidence; and (3) the trial court should not have instructed the jury on resisting arrest. We affirm in part and reverse in part.

At trial, Esther Ensley testified that at 12:45 a.m. on August 23, 1994, she awoke after she heard a loud crash. She looked out her bedroom window and saw a group of men standing behind a Pepsi truck in front of a Super-Valu grocery store across the street. As she watched the men, they ran toward a nearby apartment building. She then saw a man with dark hair in blue jeans and a white tee shirt take a case of bottles out of the truck, put it on his shoulder and carry it away. Ensley said she got a side view of the man's face. The men were laughing at him. The man then went in back of the building beyond her view. She said that the lighting in the area was good and that she had no trouble seeing the man or the truck. She then called the police.

Ensley further testified that when the police arrived, the man that had removed the bottles from the truck talked to the officer. Ensley heard the man tell the officer that the people who had taken the bottles had left. Ensley then called the police again and told them that the man was lying and that he was the man who had stolen the bottles. Officer Underwood then came to her house. She told Underwood that she was positive that the man he had been speaking to had lied about taking the bottles. Ensley identified the defendant in court as the man who had taken the bottles.

Police officer Harry Underwood testified that on August 24, 1994, he received a call at 12:45 a.m. to report to the Super-Valu. When he arrived at the scene he spoke to some people, including the defendant. He received a dispatch over the radio that identified the defendant as the person who had taken the bottles. He then went to the house across the street and spoke to Ensley. After speaking to her, he arrested the defendant.

Underwood further testified that he later drove the defendant to the police department and took him into an interrogation room. The

defendant refused to answer questions and began swearing at him. Underwood told him that he would have to go back into the holding cell. As he reached down to grab the defendant, the defendant sprang out of the chair, hit Underwood in the chest, threw him into the wall and put him in a headlock. Other officers came into the interrogation room and assisted Underwood in subduing and handcuffing the defendant.

The defendant testified that he was attending an apartment party near the Super-Valu store. He left the apartment to look for his friend and noticed the police outside. He listened to the police officer's conversation with some other men and then went back to the party. When he arrived back at the apartment, another police officer told him that someone had accused him of stealing pop bottles. He returned to the store and Underwood arrested him.

The defendant admitted that he swore at Underwood at the police station but testified that, in response, Underwood grabbed him and ripped the gold chain from his neck. When the defendant pushed Underwood away, the officer grabbed him around his upper body and slung him on the desk. The defendant told Underwood that he was not going to fight, but Underwood pushed him and hit him in the mouth.

Steven Johnson, the defendant's private investigator, testified that he had photographed the police station, the Ensley house, and the Super-Valu. He said that some of the photographs were taken without a flash and therefore were darker than what he had actually seen the day he took them. The photographs were then admitted into evidence.

The trial court then repeated Johnson's comment to the jury about some of the photographs being darker than it actually was on the day they were taken. Defense counsel responded that he did not introduce the photographs taken without a flash into evidence. The trial court then looked at the photographs and questioned Johnson about them. The trial judge then stated to the jury that the admitted photographs actually did depict what Johnson saw the day he had taken them.

After the close of evidence, the court gave the jury Illinois Pattern Jury Instructions, Criminal, No. 24—25.20 (3d ed. 1992). That instruction states as follows:

> "A person is not authorized to use force to resist an arrest which he knows is being made by a peace officer, even if he believes that the arrest is unlawful and the arrest in fact is unlawful."

On appeal, the defendant first argues that he was not proved guilty of burglary beyond a reasonable doubt because the evidence was based on doubtful, vague and unreliable identification testimony.

■ In reviewing a conviction, this court must ask itself whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Collins*, 106 Ill. 2d 237, 478 N.E.2d 267 (1985). It is well settled that a defendant's conviction may be affirmed based upon the identification testimony of a single witness who had an adequate opportunity to observe the defendant. *People v. Phillips*, 99 Ill. App. 3d 362, 425 N.E.2d 1040 (1981).

Here, we find Ensley's identification testimony to be sufficiently reliable to support the burglary conviction. Ensley watched the defendant take the bottles from the truck and heard him deny doing so to the police. She identified him at the scene and again at trial. Any questions regarding her ability to identify the defendant were primarily for the trier of fact to resolve. Accordingly, we find that the defendant was proven guilty of burglary beyond a reasonable doubt.

Next, the defendant argues that the trial court erred in commenting on the credibility of the defense's evidence to the jury. Specifically, he refers to the court's comments about the darkness of the photographs.

■ A judge's comments constitute reversible error only if the remarks prejudice the defendant. See *People v. Snulligan*, 204 Ill. App. 3d 110, 561 N.E.2d 1125 (1990). It is the defendant's burden to show that he has been harmed by the trial court's remarks. *People v. Wells*, 106 Ill. App. 3d 1077, 436 N.E.2d 688 (1982).

■ Here, the defendant was not harmed by the trial judge's comments. In fact, the comments assisted the jury and actually benefited the defendant. If the judge had simply admitted the photographs into evidence, the jury may have mistakenly believed that some of those photographs portrayed the lighting as darker than it actually was. If so, the jury might have believed that Ensley had a better opportunity to view the defendant than she actually did. Instead, the judge correctly stated that the photographs admitted fairly depicted the lighting of the areas. Therefore, the judge's comments clarified a potential misunderstanding and did not result in prejudice to the defendant. We find no error.

Finally, the defendant argues that the trial court committed reversible error when it instructed the jury on resisting arrest when he was never charged with that crime.

■ The law is clear that the jury can be instructed on only the crime charged and offenses included within that crime. *People v. McCauley*, 2 Ill. App. 3d 734, 277 N.E.2d 541 (1972). The natural result of giving an instruction based on an uncharged crime is prejudice to the defendant. *People v. McCauley*, 2 Ill. App. 3d 734, 277 N.E.2d 541

(1972). Therefore, it is reversible error to inject into the case, by way of instruction, an issue that is not properly before the jury. *Shore v. Turman*, 63 Ill. App. 2d 315, 210 N.E.2d 232 (1965).

In *McCauley*, the defendant was charged with aggravated battery. The trial court instructed the jury on resisting arrest and attempted escape. On appeal, the court found that instructing the jury on resisting arrest and escape when they were not charged was error and created prejudice to the defendant. "The law is clear that the jury can be instructed only concerning the crime charged[.]" *People v. McCauley*, 2 Ill. App. 3d at 736, 277 N.E.2d at 542. We agree.

Here, the trial court erred in instructing the jury on the charge of resisting arrest. The basis for the aggravated battery charge was the altercation with Officer Underwood, which occurred long after the defendant had been arrested. Thus, an instruction on resisting arrest was unwarranted. Moreover, the defendant was prejudiced by the giving of such an instruction. At trial, the defendant claimed that he struck Underwood in self-defense. The instruction on resisting arrest, however, informed the jury that the defendant was not authorized to use any force against a police officer in the course of an arrest. The instruction could have confused the jury and led it to conclude that the defendant could not have lawfully defended himself in the interrogation room. Thus, the defendant was hindered from presenting his theory of self-defense because the improper instruction denied him an affirmative defense to the aggravated battery charge.

The judgment of the circuit court of Henry County is affirmed as to the burglary conviction and is reversed as to the aggravated battery count.

Affirmed in part; reversed in part and remanded.

McCUSKEY and MICHELA, JJ., concur.