SECOND DIVISION
APRIL 13, 2010

1-07-2698

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 04 CR 14476 |
| | ) | |
| STANLEY McDONALD, | ) | Honorable |
| | ) | Clayton J. Crane and |
| | ) | Dennis J. Porter, |
| Defendant-Appellant. | ) | Judges Presiding. |

PRESIDING JUSTICE CUNNINGHAM delivered the opinion of the court:

In a jury trial, the defendant, Stanley McDonald, was convicted of first degree murder and sentenced to 27 years in prison. On appeal, the defendant raises the following issues: the trial court[1] erred by giving instructions relating to armed robbery, effectively adding a new charge after all the evidence had been presented to the jury, thereby denying the defendant the opportunity to defend against that crime, with which he had not been charged; and, it was error for the trial court to refuse to instruct the jury on involuntary manslaughter. For the reasons that follow, we reverse the defendant's conviction and sentence and remand this case for a new trial.

BACKGROUND

The defendant was indicted for intentional and knowing murder,[2] but not felony murder or

---

[1]Judge Clayton J. Crane presided over the pretrial matters of this case but due to illness could not continue and the trial was conducted by Judge Dennis J. Porter.

[2]Our supreme court has used these terms to describe two forms of first degree murder: the intentional killing of another (intentional murder) (720 ILCS 5/9-1(a)(1) (West 2006)); and the killing of another by one who knows that his actions create the strong probability of death or great bodily harm (knowing murder) (720 ILCS 5/9-1(a)(2) (West 2006)).

armed robbery, in the stabbing death of Lawrence Gladney (Gladney). At trial, the prosecutor presented the defendant's written confession[3], taken the day after the stabbing, in which the defendant related the following. The defendant and Gladney were lovers who lived together in the basement of the home of the defendant's aunt, Marian Moorhe, on West 111th Street in Chicago. On the morning of May 16, 2004, Gladney left the residence on a bicycle and was gone most of the day. When Gladney left that morning, he and the defendant argued. The defendant claimed that he was concerned that Gladney was "running around or cheating" and "bringing diseases home." During that day, the defendant drank beer and mentioned to Calvin Holliday, another resident of the house, that Gladney was not home and was "out there hustling or something." When Gladney came home that evening, the defendant asked him where he had been, and the two men began to argue. The defendant grabbed the bicycle which Gladney had been riding during the day and tried to take it to the basement apartment which they shared. Gladney struggled to keep the defendant from taking the bicycle to the basement. At one point Gladney struck the defendant. The defendant seized a butcher knife and, in his words, began "flinging" it at Gladney. Gladney eventually broke free from the struggle. The defendant then realized that he had stabbed Gladney. The defendant stated that he panicked when Gladney fell to the ground, bleeding, and he tried to stop the bleeding. The defendant expressed remorse, saying that he did not mean to stab Gladney.

Medical testimony established the following facts. Gladney had been stabbed three times; in

---

[3]Prior to trial the defendant moved to suppress his confession on the ground that he was so intoxicated when he gave it that he could not have knowingly waived his rights. The motion was denied.

the chest, arm, and face. Gladney was taken to the hospital immediately after the stabbing, where tests determined that he had a blood alcohol level of .19, which is twice the legal limit. He also had cocaine in his system. The stab wound to Gladney's face partially severed his carotid artery. There was extensive bleeding. At the hospital, Gladney suffered a massive stroke and lapsed into a coma. He was placed on life support for one week and then at his family's request was removed from life support and died. The medical examiner concluded that Gladney died from the stab wounds.

The defendant's confession was partially corroborated by the testimony of several of the prosecutor's witnesses. The defendant's aunt, Marian Moorhe, although uncooperative, was called to testify by the prosecutor. Although she was present during the incident, she repeatedly stated that she could not remember what had occurred. The substance of her testimony was that she heard the defendant and Gladney arguing and she called the police, who took "something" away from the defendant. The prosecutor was then permitted to use as substantive evidence, Moorhe's pretrial statement to the police, made under oath, the day after the stabbing. In that statement, Moorhe said that Gladney left the house early on the day of the incident. The defendant drank beer during the day while Gladney was away, and was upset, repeatedly complaining about Gladney's absence. That evening Gladney returned. Moorhe was inside the house when she heard the defendant and Gladney arguing and fighting. She called the police. According to Moorhe's statement to the police, the defendant was attempting to pull the bicycle away from Gladney. Gladney attempted to keep the defendant from taking the bicycle to the basement. In this sworn pretrial statement, Moorhe said she thought she saw the defendant with a knife, although she denied this in her trial testimony. After the police arrived, Moorhe went outside, where she saw a police officer take a knife from the defendant.

3

Moorhe testified that she did not see Gladney with any weapons at the time of the fight. Calvin Holliday, who was engaged to the defendant's cousin, Charlotte Davis, testified that on the day in question, beginning at 9 a.m., he drank beer with the defendant. He drank a large quantity of beer during the day and also drank wine. Holliday recalled that the defendant was complaining about not knowing where Gladney was. The defendant was carrying a knife and threatened to kill Gladney. During the day, Gladney briefly returned to the house. At that time the defendant pointed the knife at Gladney and again threatened him, saying "I'm going to kill you today." Gladney left again but returned that evening. Holliday was inside the house but went outside when the defendant's cousin, Charlotte Davis, who also lived at the house, ran inside, "hollering." Holliday saw Gladney lying on the sidewalk, bleeding from his face. The defendant was leaning over Gladney, telling him to wake up. The defendant held in his hand the same knife he had used to threaten Gladney earlier in the day.

Charlotte Davis testified that on the day in question the defendant was angry and "pouting" because Gladney was not home. The defendant had a butcher knife in his back pocket. At one point the defendant said that he was going to hurt Gladney when he returned. Later that evening, Charlotte heard the defendant and Gladney outside. Gladney said "No, don't touch my bike." Charlotte went outside and saw the defendant and Gladney struggling over the bicycle. The defendant was attempting to pull it into the basement and Gladney resisted. At one point Gladney hit the defendant. The defendant then stabbed Gladney in the face with the knife. The police and emergency medical personnel were called.

Chicago police officer Farah Baqai testified that she and her partner responded to the call for assistance at the home. When she saw the defendant standing over Gladney, she asked the defendant

what happened. The defendant said that somebody had stabbed Gladney and he was trying to help. The officer found a butcher knife near the defendant. When Charlotte Davis told Officer Baqai that it was the defendant who had stabbed Gladney, Officer Baqai placed the defendant under arrest.

The sole witness called to testify by the defense was Chicago police officer Cory Chapton. He testified that the defendant was 59 years old on the date of the stabbing, weighed 160 pounds, and was 5 feet 9 inches tall. It had previously been established that Gladney was 43 years old, weighed 153 pounds, and was 5 feet 11 inches tall.

At the jury instructions conference, which occurred after the close of evidence, the trial court agreed to give jury instructions concerning the following concepts which are pertinent to this appeal: self-defense; the inability of an initial aggressor to claim self-defense; second degree murder based on serious provocation and an unreasonable belief in self-defense; the unavailability of the defense of the justifiable use of force when the defendant was committing a forcible felony such as armed robbery (Illinois Pattern Jury Instructions, Criminal, No. 24-25.10 (4th ed. 2000)) (hereinafter IPI Criminal 4th); and the elements of armed robbery. The defendant objected to the two latter instructions on the grounds that they injected the issue of armed robbery at the close of the trial when he had not been charged with that crime and there had been no evidence of armed robbery presented to the jury during the entire trial. He claimed that this late introduction of an armed robbery instruction into the trial was prejudicial, as he was taken by surprise and had no opportunity to rebut the late assertion of armed robbery, as the trial was over when the prosecutor introduced this instruction. Over defense objection, and at the prosecutor's request, the trial court agreed to give the jury IPI Criminal 4th, No. 14.05, which said that the defendant was not permitted to use a theory

of self-defense if the killing occurred in the process of committing a forcible felony, in this case, armed robbery. The trial court denied the defendant's request for an instruction on involuntary manslaughter. During closing argument, the prosecutor argued to the jury that the defendant had committed an armed robbery by attempting to take the bicycle from Gladney while in possession of a knife.

After deliberations, the jury found the defendant guilty of first degree murder and the trial court sentenced him to 27 years in prison. The defendant has now brought this timely appeal.

ANALYSIS

The defendant asserts that he was prejudiced when, over defense objection, and after all the evidence had been presented, the trial court granted the prosecutor's motion to instruct the jury that a claim of self-defense to murder was not available to the defendant if he committed the killing in the course of an armed robbery. The defendant claims that the prejudice was compounded by the trial court's instruction to the jury regarding the elements of armed robbery. The defendant also claims that it was error for the trial court to refuse to give the jury an instruction regarding involuntary manslaughter.

The record discloses that, prior to trial, the defense disclosed to the prosecutor that defendant intended to assert self-defense, because Gladney struck the first blow. The defendant was indicted for two counts of first degree murder. The first count charged:

> "[The defendant] committed the offense of first degree murder in that
>
> he, without lawful justification, intentionally or knowingly stabbed and
>
> killed Lawrence Gladney with a knife ***."

6

The second count of the indictment charged:

> "[The defendant] committed the offense of first degree murder in that he, without lawful justification, stabbed and killed Lawrence Gladney with a knife, knowing that such stabbing with a knife created a strong probability of death or great bodily harm to Lawrence Gladney ***."

The prosecutor did not amend the charges against the defendant and proceeded to trial on the original indictment for two forms of first degree murder, intentional and knowing.

At the jury instructions conference, the defendant successfully requested that the trial court give a series of instructions on second degree murder. The first instruction stated in pertinent part:

> "If the State proves beyond a reasonable doubt that the defendant is guilty of first degree murder, the defendant then has the burden of proving by a preponderance of the evidence that a mitigating factor is present so that he is guilty of the lesser offense of second degree murder, and not guilty of first degree murder. In deciding whether a mitigating factor is present, you should consider all of the evidence bearing on this question."

The second pertinent instruction stated:

> "A mitigating factor exists so as to reduce the offense of first degree murder to the lesser offense of second degree murder if, at the time of the killing, the defendant acts under a sudden and intense passion resulting from serious provocation by the deceased. Serious

provocation is conduct sufficient to excite an intense passion in a

reasonable person."

A third instruction, concerning an alternative mitigating factor, stated:

"A mitigating factor exists so as to reduce the offense of first degree

murder to the lesser offense of second degree murder if at the time of

the killing the defendant believes that circumstances exist which would

justify the deadly force he uses, but his belief that such circumstances

exist is unreasonable."

It was at this jury instructions conference, after the evidentiary portion of trial had concluded,

that the prosecutor convinced the trial court to instruct the jury with IPI Criminal 4th No. 24-25.10,

which states:

"A person is not justified in the use of force if he is committing

an armed robbery."

The prosecutor also asked the court to instruct the jury with IPI Criminal 4th No.14.05, which

provides the elements of armed robbery:

"A person commits the offense of armed robbery when he,

while carrying on or about his person, or while otherwise armed with

a dangerous weapon, intentionally or knowingly takes property from

the person or presence of another by the use of force or by threatening

the imminent use of force."

The defendant asserts that these instructions had the effect of injecting into the trial, at its end, a new

charge against him, armed robbery, when in fact he was never charged with that offense. He contends that if he had known that the jury would be effectively instructed to determine whether he committed this offense, he could and would have prepared a defense to that charge.

We note that at the prosecutor's request, the trial court also instructed the jury that an initial aggressor may not claim self-defense. That instruction states:

> "A person who initially provokes the use of force against himself is justified in the use of force only if the force used against him is so great that he reasonably believes he is in imminent danger of death or great bodily harm, and he has exhausted every reasonable means to escape the danger other than the use of force which is likely to cause death or great bodily harm to the other person."

See IPI Criminal 4th No. 24-25.09. Accordingly, if the jury determined that the defendant was the initial aggressor, this would also have negated a self-defense claim. It would also have negated the claim that the defendant acted in the unreasonable belief that he was entitled to act in self-defense or that he acted under serious provocation.

In reviewing a trial court's decision concerning jury instructions, we apply an abuse of discretion standard. People v. Mohr, 228 Ill. 2d 53, 66, 885 N.E.2d 1019, 1026 (2008); People v. Hall, 195 Ill. 2d 1, 20, 743 N.E.2d 126, 138 (2000). A trial court abuses its discretion if jury instructions are not clear enough to avoid misleading the jury. Mohr, 228 Ill. 2d at 66, 885 N.E.2d at 1026. Given the defendant's claim of self-defense, the prosecutor argues that it was appropriate to instruct the jury that one committing an armed robbery could not claim a justifiable use of force

(IPI Criminal 4th No. 24-25.10) and it was also appropriate to instruct the jury on the elements of armed robbery (IPI Criminal 4th No. 14.05) because those instructions, if found applicable by the jury, would negate the defendant's claim of self-defense. However, the defendant argues that since he was never charged with armed robbery and therefore did not have notice or opportunity to present a defense to the charge of armed robbery, the trial court should not have given instructions related to that offense. The defendant argues that he was unfairly surprised by the injection of armed robbery into the trial after all testimony and evidence had been concluded. We agree.

Instructions that introduce elements or offenses with which a defendant was not properly charged have been held to constitute reversible error. People v. Mohr, 228 Ill. 2d 53, 885 N.E.2d 1019 (2008); People v. English, 287 Ill. App. 3d 1043, 679 N.E.2d 494 (1997); People v. McCauley, 2 Ill. App. 3d 734, 277 N.E.2d 541 (1972). In Mohr, a second degree murder conviction was reversed where the jury was also instructed on provocation, after the prosecutor stated that the State "conceded" provocation. However, there was no evidence of such provocation presented during trial. Our supreme court held that this prejudiced the defendant, since he claimed that he had not committed the killing. Mohr, 228 Ill. 2d at 67-68, 885 N.E.2d at 1027. In English, the appellate court held that it was reversible error to instruct the jury that a self-defense claim is unavailable to one who is resisting arrest, where the defendant was only charged with burglary and aggravated battery, and not resisting arrest. Also, the alleged aggravated battery occurred well after the defendant had been arrested. English, 287 Ill. App. 3d at 1047, 679 N.E.2d at 497. In reversing the defendant's conviction in English, the appellate court stated, "The natural result of giving an instruction based on an uncharged crime is prejudice to the defendant. English, 287 Ill. App. 3d at 1047, 679 N.E.2d at

497, citing <u>McCauley</u>, 2 Ill. App. 3d at 736, 277 N.E.2d at 542. In <u>McCauley</u>, the appellate court found reversible error where the defendant, charged with battery of a police officer, was not charged with resisting arrest, but the jury was instructed on a police officer's right to use force to prevent an arrestee from escaping. <u>McCauley</u>, 2 Ill. App. 3d at 736, 277 N.E.2d at 542.

In analyzing the case before us using the conceptual framework of <u>Mohr</u>, we hold that the trial court erred in giving an instruction relating to an uncharged offense. The jury could have surmised that the elements of armed robbery were definitively established since the only mention of that crime was in the prosecutor's closing argument, followed by the trial court's giving of a jury instruction relating to armed robbery. We will not speculate about the defenses which the defendant could have raised to an armed robbery charge. The defendant was not given the opportunity to raise *any* defense to the allegation that he committed that crime. Yet, the jury was allowed to consider whether the defendant committed the uncharged offense of armed robbery in deciding the defendant's guilt. We note that the crime of armed robbery was not mentioned in the prosecutor's opening statement nor during the presentation of any of the State's evidence during the trial. It is clear that the issue of armed robbery was raised by the prosecutor only after both parties had rested. The State argues that it was a necessary instruction in response to the defendant's claim of self-defense. We disagree. The record reveals that the trial court had also agreed to give the initial aggressor instruction. IPI Criminal 4th No. 24-25.09. That instruction addresses the defendant's self-defense argument and was consistent with the trial evidence as well as the defendant's pretrial indication that he intended to use a self-defense theory. Through its evidence and arguments, the State advanced the theory that the defendant was the initial aggressor, thereby giving the jury grounds to apply IPI Criminal 4th No. 24-

25.09 and reject the defendant's self-defense claim if it so chose. Thus, the reason for which the State proffered the armed robbery instruction had already been satisfied. The result of giving the armed robbery instruction was that the jury was indeed called upon to decide the defendant's fate in the context of jury instructions relating to an uncharged crime which the prosecutor had made no effort to prove and consequently for which the defendant had not asserted a defense.

The State's failure to charge the defendant with armed robbery prior to the commencement of trial deprived the defendant of the opportunity to present a defense to the assertion that he had committed an armed robbery in his struggle with Gladney over the bicycle. Yet it appears that the crux of the prosecutor's effort to block the defendant's use of self-defense, albeit after the close of evidence, rested upon the jury believing that the defendant had committed an armed robbery. As we have noted, the prosecutor had already focused on negating the defendant's attempt to characterize Gladney as the initial aggressor. Like the defendants in English and McCauley, the defendant here was forced to defend himself against uncharged offenses that were first raised in instructions to the jury. This is also similar to the predicament of the defendant in Mohr, who found himself required to negate an implication that provocation was an issue in a charge of second degree murder, when the defendant was asserting that he did not commit the offense and no evidence of provocation was presented. Here, there was evidence that the defendant stabbed Gladney after he and Gladney argued and struggled over a bicycle which Gladney had been riding. There was no other evidence regarding what one would expect to be presented by the State where it is trying to convince a jury that an armed robbery has been committed.

It is also clear that since the court had already agreed to give the initial aggressor instruction,

12

the prosecutor's concern regarding rebuttal of the self-defense argument was appropriately addressed. If the jury found, based on the evidence, that the defendant was the initial aggressor, the defendant's claim of self-defense would have been negated. But we cannot know whether the jury in fact found the defendant guilty on that basis or on the basis of the armed robbery instruction. Presenting the armed robbery instruction to the jury at the close of the trial without mentioning that crime during trial, posed a real risk that the jury could conclude that there was unpresented evidence that the defendant committed armed robbery. The jury then may have negated the defendant's self-defense claim on that basis, without such evidence having been presented. See Mohr, 228 Ill. 2d at 67-68, 885 N.E.2d at 1027.

We also note that a defendant is entitled to know the charges against him prior to trial. A defendant's fundamental right to due process includes timely notice of the charges against him and a meaningful opportunity to defend against these charges. Jackson v. Virginia, 443 U.S. 307, 314, 61 L. Ed. 2d 560, 570, 99 S. Ct. 2781, 2786 (1979). Illinois law has long held that a defendant must be notified of the offense charged with reasonable certainty. People v. Abrams, 48 Ill. 2d 446, 459, 271 N.E.2d 37, 45-46 (1971); People v. Miller, 253 Ill. App. 3d 1032, 1035, 628 N.E.2d 893, 896 (1993). Thus the criminal complaint must set out the offense in the language of the statute or specifically describe the facts which constitute the crime, so that the defendant is sufficiently informed of the specific offense and can prepare a defense. People v. Allen, 56 Ill. 2d 536, 542, 309 N.E.2d 544, 548 (1974).

The instructions given by the trial court in this case, over the defendant's objections, required the jury to consider whether the defendant had committed the uncharged offense of armed robbery.

13

The court also gave IPI Criminal 4th No. 14.05, which spelled out the elements of the offense of armed robbery. The prosecutor then injected the offense of armed robbery into his closing argument when that crime had never been mentioned during the trial. Not only was the defendant not charged with armed robbery, but he was not charged with felony murder based on armed robbery. The State clearly chose not to exercise its discretion to charge the defendant with felony murder based on armed robbery when it could have done so if it truly believed that the defendant committed armed robbery. The fact that the defendant was not charged with either armed robbery or felony murder based on armed robbery suggests that the prosecutor did not believe there had been an armed robbery. The introduction of the armed robbery jury instructions at the end of the trial appears to have been designed to deny the defendant his right to claim self-defense. During oral argument before this court, the State conceded that it knew prior to trial that the defendant intended to claim self-defense. There is therefore no excuse for the failure of the State to charge the defendant with armed robbery prior to trial, if it really believed he had committed that crime. The State's argument that it was only trying to negate the claim of self-defense with proof that the defendant was committing a forcible felony does not withstand scrutiny. Properly charging the defendant with armed robbery before trial would have given the State a proper basis for challenging the defendant's claim of self-defense while enabling the defendant to properly claim self-defense to the murder charge and to defend against the charge of armed robbery.

A defendant is also denied a fair trial when jury instructions bear the strong risk of jury confusion. People v. Wilkerson, 87 Ill. 2d 151, 160, 429 N.E.2d 526, 530 (1981). Here, an uncharged crime, not mentioned in opening statements or during the presentation of evidence, was

injected into the trial after the close of all the evidence, through the media of jury instructions and the prosecutor's final argument, and created the strong probability of jury confusion.

The State argues that any error was harmless, given what it characterizes as overwhelming evidence of the defendant's guilt of first degree murder. For purposes of addressing the threat of double jeopardy, we find the State's evidence as presented, if free from the taint of the erroneous armed robbery instruction, and believed by the jury, was sufficient to convict the defendant of first degree murder. People v. Jones, 175 Ill. 2d 126, 134, 676 N.E.2d 646, 650 (1997). But this evidence was not overwhelming. The defendant's conviction was based primarily on his confession, which he unsuccessfully challenged prior to trial on the basis that he was extremely intoxicated when he gave it. There were conflicting statements among the State's witnesses and no one actually witnessed the entire argument between the defendant and Gladney that led up to the stabbing. Some of the witnesses had been consuming alcohol for most of the day before the incident. An important State witness, Marian Moorhe, attempted to disavow her pretrial statements incriminating the defendant. For the reasons discussed, we find that the trial court committed reversible error when it permitted the prosecutor to inject the offense of armed robbery into the trial after the close of all the evidence, where the defendant was never charged with that offense.

Because we are reversing the defendant's conviction and remanding for a new trial, we do not reach the defendant's contention that it was error for the trial court to refuse to instruct the jury on the lesser offense of involuntary manslaughter. If this issue arises upon retrial, the trial court shall be guided by the well-articulated principles regarding an involuntary manslaughter instruction, as outlined in People v. Young, 248 Ill. App. 3d 491, 510, 618 N.E.2d 1026, 1040 (1993).

1-07-2698

For the reasons set forth above, we reverse the defendant's conviction and sentence for first degree murder and remand this case for a new trial.

Reversed and remanded.

THEIS and KARNEZIS, JJ., concur.