THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
DION TERRY MILLER, Defendant-Appellant.

Second District   No. 2—91—1418

Opinion filed December 27, 1993.—Rehearing denied January 25, 1994.

G. Joseph Weller and Paul Alexander Rogers, both of State Appellate
Defender's Office, of Elgin, for appellant.

James E. Ryan, State's Attorney, of Wheaton, and Constance Augs-
burger, of Mt. Morris (William L. Browers and Norbert J. Goetten, both of
State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE GEIGER delivered the opinion of the court:

Following a bench trial on August 26, 1991, the defendant, Dion
Terry Miller, was convicted of obstructing justice (Ill. Rev. Stat. 1991,
ch. 38, par. 31—4(a) (now 720 ILCS 5/31—4(a) (West 1992))), aggra-
vated assault (Ill. Rev. Stat. 1991, ch. 38, par. 12—2(a)(6) (now codi-
fied, as amended, at 720 ILCS 5/12—2(a)(6) (West 1992))), and battery
(Ill. Rev. Stat. 1991, ch. 38, par. 12—3(a)(1) (now 720 ILCS 5/12—

3(a)(1) (West 1992))). On December 12, 1991, the trial court denied the defendant's post-trial motion and sentenced him *in absentia* to 12 months' conditional discharge and 6 months' confinement in the county jail.

In this timely appeal, the defendant contends only that the evidence was insufficient to sustain beyond a reasonable doubt the conviction of obstructing justice as charged in the complaint. The complaint alleged that, with intent to prevent his "apprehension," the defendant, Dion Terry Miller, "knowingly furnished false information" regarding his own identity in that he related to Officer William Hoogland that his name was "Melvin Taylor" and "Djuan Walker." However, the evidence showed that the defendant was in custody when he gave the false names. Therefore, the defendant argues that he could not have given false information with the intent to prevent his "apprehension."

We agree that an essential element of the complaint was not proved beyond a reasonable doubt, and we therefore reverse the conviction and sentence as to the charge of obstructing justice.

We recite only those facts in the record relevant to our disposition of the issue raised on appeal. At trial, Dolores Young, the defendant's mother, testified that the defendant was born July 29, 1972, and his true name was Dion Terry Miller. On cross-examination, she testified that he had several nicknames and he "makes up names of people all the time." She had never heard him use the name Melvin Taylor, but he had used the name Djuan Walker.

Officer Keith Grabarek of the Woodridge police department testified that, on June 2, 1991, at 2:15 a.m., he observed the defendant and two other persons on a public street. He approached the people because he suspected a curfew violation. The defendant stated he was 18 years old and admitted he had been drinking beer. Grabarek placed him under arrest for possession of alcohol by a minor. At the police station, the defendant stated that his name was Melvin T. Taylor and his date of birth was August 16, 1972. Grabarek checked departmental records and found booking photographs and fingerprint cards for the arrest of a suspect who signed his name "Djuan Walker" on April 15, 1991, and for that of another suspect who signed his name "Gerald Walker" on May 15, 1991. Grabarek identified the defendant as the same person who had been depicted in both of the prior booking photographs. When confronted with the fact of his previous arrests under two different names, the defendant said he had given a false name and his actual name was Djuan Walker. Grabarek also testified regarding the physical resistance of the defendant to the

fingerprinting procedure and of the defendant's lashing out and striking one of the officers, Sergeant Krupka. The defendant was eventually subdued with a stun gun. The defendant submitted to being fingerprinted and signed the card "Djuan Walker." Grabarek was eventually able to ascertain the defendant's name and estimated it took three to five hours to do so.

Officer William Hoogland, who worked as a juvenile officer, testified that he arrived at the police station at about 5:30 or 6 a.m. on June 2, 1991. The defendant stated that his name was Melvin Taylor and also stated that his name was Djuan Walker. After checking the departmental records, Hoogland called the defendant's mother's home. Hoogland obtained the defendant's true name before he left the department at 8 a.m. Grabarek informed Hoogland that the defendant's mother declined to come to the station.

Sergeant David Krupka testified regarding the defendant's resistance to the fingerprinting procedure and the struggle.

The defendant testified that his true name was Dion Terry Miller. He had been previously arrested under the name of Djuan Walker by the Woodridge police department. The defendant denied that a booking photograph offered in connection with his prior arrest as Djuan Walker was a photograph of him. He admitted that the photograph taken in connection with the arrest under the name of "Gerald Walker" was in fact a picture of him. According to the defendant, he was not initially informed of the charge for which he was arrested by Officer Grabarek and was not told at the police station what the charge was. He was later told of the charge when the police confronted him with his real name. He slept in a cell until 5:30 or 6 a.m. when the first attempt to get his fingerprints occurred. The defendant admitted that, when he was first arrested, he said his name was Melvin Taylor. The defendant claimed that he felt that he had the right to refuse being fingerprinted because the police would not tell him the nature of the charge against him. When the defendant resisted being fingerprinted several times and demanded to be informed of the charges, Sergeant Krupka used the stun gun on him.

At 7 a.m., the police told the defendant they believed his true name was "Djuan Walker." The defendant said his name was Melvin Taylor. The police returned about 20 minutes later to get him out of the cell and called him Dion Terry Miller. The defendant then agreed to be fingerprinted. Just before he was transported from the police department to the county jail but after he had signed the fingerprint card with the name "Djuan Walker," the defendant acknowledged that his name was Dion Terry Miller.

■ In its appellee brief, the State initially argues that the defendant's appeal should be dismissed because he has been a fugitive, having been absent from his sentencing hearing. The State points out that a warrant for his arrest was issued and alleges that defendant remained at large until June 23, 1993. The defendant's notice of appeal was filed on December 13, 1991. The length of the defendant's absence as a fugitive from this jurisdiction is a matter not strictly within the record on appeal. Matters not of record are not properly before a reviewing court and will not ordinarily be considered on appeal. (See *Tomlen Group, Ltd. v. Goldfarb* (1981), 101 Ill. App. 3d 154, 157.) In essence, the State seeks to deprive the defendant of his right to appeal without presenting a motion sufficiently supported by matters of record or by affidavit. See 134 Ill. 2d R. 361.

Even were we to consider the propriety of the State's request to dismiss, the State has not cited binding authority empowering or requiring this court to dismiss an appeal when the defendant has returned to this jurisdiction. The issue raised does not affect our appellate jurisdiction, and we "adhere to the century-old rule that an appellate court has the discretionary power to refuse to hear a fugitive's appeal unless and *until the fugitive returns to the jurisdiction.*" (Emphasis added.) (*People v. Partee* (1988), 125 Ill. 2d 24, 37; see *People v. Sayles* (1985), 130 Ill. App. 3d 882, 888.) Under the circumstances, we believe the State's belated request to dismiss cannot be properly considered.

■ On appeal, as in the trial court, the defendant contends that he was not proved guilty beyond a reasonable doubt of the offense charged in the complaint. We agree. Section 31—4(a) of the Criminal Code of 1961 (Code), which defines the offense of obstructing justice, states in pertinent part: "A person obstructs justice when, with intent to prevent the apprehension or obstruct the prosecution or defense of any person, he knowingly *** furnishes false information." (Ill. Rev. Stat. 1991, ch. 38, par. 31—4(a) (now 720 ILCS 5/31—4(a) (West 1992)).) In the case at bar, the complaint charged the defendant with intent to prevent his own "apprehension" and did not charge him with intent to obstruct his prosecution.

A complaint for a statutory offense must either set out the offense in the language of the statute or specifically set forth the facts which constitute the crime and must notify the accused with reasonable certainty of the precise offense charged. (*People v. Abrams* (1971), 48 Ill. 2d 446, 459.) The purpose of this requirement is to make certain that the accused is adequately informed of the nature and elements of the offense charged against him so that he may pre-

pare his defense and protect himself from double jeopardy. (*People v. Nibbio* (1989), 180 Ill. App. 3d 513, 518, citing *People v. Thompson* (1984), 125 Ill. App. 3d 665.) The State must prove the essential elements of the charging instrument as alleged and without variance. *People v. Austin* (1984), 123 Ill. App. 3d 788, 794, citing *People v. Rothermel* (1982), 88 Ill. 2d 541, 544, and *People v. Mosby* (1962), 25 Ill. 2d 400, 403.

The word "apprehension" used in the statute is not defined in the Code, but the trial court understood it to mean "arrest." However, the evidence clearly showed that defendant was already under arrest. Therefore, the defendant argues that the proof does not show the required intent of the defendant to prevent his arrest. The State argues that the word "apprehension" should be construed under the statute to mean more than its conventional legal meaning, "seizure by legal process: arrest," and urges this court to construe the word to mean "the act or power of perceiving or comprehending" or "the result of apprehending mentally" (Webster's Ninth New Collegiate Dictionary 97 (1987)). Based on this alternative definition, the State further argues that the defendant intentionally obstructed the (mental) apprehension of his true identity. At best, we find this argument strained. The State offers no legal authority, persuasive or otherwise, for the construction it now urges.

"It is fundamental that in interpreting a statute words are to be given their plain meaning whenever possible." (*People v. Nibbio*, 180 Ill. App. 3d at 516.) Although a court is to give effect to the legislative intent, a penal statute must nevertheless be strictly construed in favor of the accused. (*Nibbio*, 180 Ill. App. 3d at 516.) In applying these principles to the present case, we believe that, in the context of the criminal statute involved, the established, plain and ordinary meaning of "apprehension" is a "seizure, taking, or arrest of a person on a criminal charge." (Black's Law Dictionary 101 (6th ed. 1990). This is the meaning that we apply to the term in the case before us. Since the evidence shows that the defendant was already under arrest when he gave purportedly false names to the officer, he could not have offered such information with the intent to prevent his apprehension or arrest—an event that had already taken place.

The State failed to prove beyond a reasonable doubt an essential element of the offense as charged. Meeting this requirement is not a mere technicality; it is founded on the constitutional safeguard against double jeopardy. (*People v. Smith* (1974), 18 Ill. App. 3d 851, 852.) Since defendant was not proved guilty of the offense as charged, we must reverse the conviction and sentence for the offense of ob-

structing justice. See *People v. Daniels* (1979), 75 Ill. App. 3d 35, 40-41; *Smith*, 18 Ill. App. 3d at 853; see also *People v. Mosby*, 25 Ill. 2d at 403.

The judgment of the circuit court as to the offense of obstructing justice is reversed.

Reversed.

WOODWARD and QUETSCH, JJ., concur.