# Illinois Official Reports

## Appellate Court

*In re Q.P.*, 2014 IL App (3d) 140436

| | |
|---|---|
| Appellate Court Caption | *In re* Q.P., a Minor (The People of the State of Illinois, Petitioner-Appellee, v. Q.P., Respondent-Appellant). |
| District & No. | Third District<br>Docket No. 3-14-0436 |
| Filed | October 27, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The trial court's order sentencing respondent to the Department of Juvenile Justice following a finding that he was guilty of obstruction of justice as charged in a delinquency petition was reversed, since respondent had already been apprehended when he gave a police officer a false name and birth date, and, therefore, he was not capable of having the specific intention to prevent his own apprehension. |
| Decision Under Review | Appeal from the Circuit Court of Peoria County, No. 14-JD-102; the Hon. Albert L. Purham, Judge, presiding. |
| Judgment | Reversed. |
| Counsel on Appeal | Mark D. Fisher, of State Appellate Defender's Office, of Ottawa, for appellant.<br><br>Jerry Brady, State's Attorney, of Peoria (Laura E. DeMichael, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |

Panel                    JUSTICE O'BRIEN delivered the judgment of the court, with opinion.
Justice McDade concurred in the judgment and opinion.
Justice Holdridge dissented, with opinion.

**OPINION**

¶ 1       The minor, Q.P., was charged in a delinquency petition with obstruction of justice (720 ILCS 5/31-4(a) (West 2012)). The petition alleged that on March 31, 2014, Q.P. knowingly furnished false information to a police officer with the intent to prevent his own apprehension. Following a bench trial, Q.P. was found guilty of the charged offense and sentenced to a term in the Department of Juvenile Justice not to exceed three years or the minor's twenty-first birthday, whichever shall come first. Q.P. appeals, arguing that the evidence was insufficient to prove he had the intent to prevent his own apprehension, because the evidence showed that he had already been apprehended at the time he gave false statements to the police. We reverse.

¶ 2                                         FACTS

¶ 3       On April 1, 2014, Q.P. was charged in a delinquency petition with obstruction of justice (720 ILCS 5/31-4(a) (West 2012)). The petition alleged that on March 31, 2014, Q.P., "with the intent to prevent the apprehension of [himself], knowingly furnished false information to *** a police officer." The matter proceeded to trial on May 5, 2014.

¶ 4       Police officer Jonathan Irving testified that on the morning of March 31, 2014, he was responding to a report of a vehicle burglary in progress when he identified a male that fit the description given in the report. Irving stated, "At that time, I stopped the male and detained him *** to determine the outcome of the investigation." Irving testified that he got out of his patrol car and told the subject to stop, while drawing his duty weapon to the "sul position." Irving explained that the sul position is a ready position, where the weapon is drawn but pointed directly at the ground.

¶ 5       After directing the subject to place his hands on the hood of the patrol car, Irving handcuffed the subject with his hands behind his back. Irving then patted the subject down for officer safety purposes, which Irving testified to be common practice. Irving then placed the subject, still handcuffed, into the backseat of the patrol car. It had not been determined at this point, according to Irving, whether the subject would be transported to the police department. In court, Irving identified Q.P. as the person he detained.

¶ 6       Irving then asked Q.P. for his name and date of birth, to which Q.P. replied that his name was Antwan A. Ellis, with a date of birth of September 22, 1997. Q.P. also told Irving he was currently staying with his mother, Trish. Although he could not remember his mother's exact address, Q.P. offered to show Irving the house. Irving transported Q.P. to the street his mother lived on, and Q.P. identified his mother's house.

¶ 7	Irving then made contact with a resident of the house named Patricia, who informed him that she did not know anyone by the name of Antwan Ellis. When Irving illuminated Q.P. with his flashlight, Patricia identified the minor as "Q*** P***," whom she knew from having previously dated his father.

¶ 8	Irving returned to the patrol car and confronted Q.P.–still handcuffed in the backseat of the patrol car–about the false name. Q.P. then told Irving that his name was "Q*** P***," and his date of birth was August 30, 1997. Q.P. spelled his first and last names for Irving, but spelled each name incorrectly by one letter. Irving testified that Q.P. "stated that he gave me a false name because he didn't want to get in trouble for something that he did not do." Irving then transported Q.P. to the police station.

¶ 9	While at the police station, Irving learned from reports the correct spelling of Q.P.'s name. Irving also determined that Q.P. was a runaway from Quincy, Illinois. Irving confronted Q.P. about the misspelling of his name. Irving testified: "[Q.P.] informed me that he misspelled his name intentionally to keep me from locating his juvenile warrant." Irving confirmed that there was a valid warrant outstanding for Q.P.

¶ 10	Detective Sherell Stinson testified that at approximately 5 a.m. on the morning of March 31, 2014, he had a conversation with Q.P. at a Peoria police station. In that conversation, Q.P. admitted that he had provided a false name "because he knew he had a warrant."

¶ 11	At closing argument, defense counsel raised the same issue as Q.P. does here: that the minor could not have had the intent to prevent his apprehension where he was already apprehended at the time of his false statements. In support, defense counsel cited to *People v. Miller*, 253 Ill. App. 3d 1032 (1993), in which the court found that an already arrested person could not have the requisite intent of preventing his own apprehension. The trial court rejected this argument and found Q.P. guilty. Addressing the argument, the court found that *Miller* was distinguishable on the grounds that the *Miller* defendant had been arrested, whereas Q.P. had not.

¶ 12	The court sentenced Q.P. to a term in the Department of Juvenile Justice not to exceed three years or the minor's twenty-first birthday, whichever shall come first. Q.P. appeals.

¶ 13	ANALYSIS

¶ 14	When a challenge is made to the sufficiency of the evidence at trial, we review to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Baskerville*, 2012 IL 111056. In making this determination, we review the evidence in the light most favorable to the prosecution. *Id*. Questions of law, such as the interpretation of a statute, are reviewed *de novo*. *People v. Lloyd*, 2013 IL 113510.

¶ 15	Illinois's obstruction of justice statute provides, in part, that "[a] person obstructs justice when, with intent to prevent the apprehension or obstruct the prosecution or defense of any person, he or she knowingly *** furnishes false information." 720 ILCS 5/31-4(a)(1) (West 2012). "Apprehension" is not defined in the statute. As a threshold matter, then, we must determine the meaning of "apprehension" under the obstruction of justice statute.

¶ 16	I. Q.P.'s Apprehension

¶ 17	It is axiomatic that the primary rule of statutory construction is to determine and give effect to the legislature's intent. *People v. Ellis*, 199 Ill. 2d 28 (2002). Where possible, this is best

accomplished by giving the words of a statute their plain and ordinary meaning. *Id*. Further, criminal statutes are to be strictly construed in favor of the accused, and "nothing should be taken by intendment or implication beyond the obvious or literal meaning of the statute." *People v. Laubscher*, 183 Ill. 2d 330, 337 (1998).

¶ 18    The court in *Miller*, 253 Ill. App. 3d 1032, applied those very principles to the same question we face today. In so doing, the court determined that "the established, plain and ordinary meaning of 'apprehension' is a 'seizure, taking, or arrest of a person on a criminal charge.' " *Id*. at 1036 (quoting Black's Law Dictionary 101 (6th ed. 1990)). A subsequent edition of Black's Law Dictionary defines "apprehension" as "[s]eizure in the name of the law; arrest." Black's Law Dictionary 117 (9th ed. 2009).

¶ 19    The court in *People v. Smith*, 337 Ill. App. 3d 819 (2003), stated that a defendant who was stopped at a traffic stop and told by police to exit the vehicle had not been apprehended. Justice Turner, however, concurring in the *Smith* decision, wrote specifically that he would adopt the definition set forth in *Miller*. *Id*. at 825-26 (Turner, J., specially concurring). Justice Myerscough, dissenting from the *Smith* decision, also explicitly equated apprehension with seizure. *Id*. at 826 (Myerscough, J., dissenting).

¶ 20    We find that the definition of "apprehension" set forth by the *Miller* court and a majority of the *Smith* court is the most appropriate. "Apprehension" under the obstruction of justice statute means a "seizure." The use of the disjunctive in the *Miller* court's definition– " 'seizure *** or arrest' "–properly encompasses the distinction between the two terms. (Emphasis added.) *Miller*, 253 Ill. App. 3d at 1036 (quoting Black's Law Dictionary 101 (6th ed. 1990)). The broader concept of seizure includes but is not limited to formal arrest. See *People v. Luedemann*, 222 Ill. 2d 530 (2006) (discussing arrests, seizures, and other police-citizen encounters). Had the legislature intended to limit the definition of apprehension to formal arrest, it simply would have used those words. See, *e.g.*, 720 ILCS 5/31-4.5 (West 2012) ("A person commits the offense of obstructing identification when he or she intentionally or knowingly furnishes a false or fictitious name *** to a peace officer who has[ ] *** *lawfully arrested the person*." (Emphasis added.)).

¶ 21    A seizure occurs "when an officer ' "by means of physical force or show of authority, has in some way restrained the liberty of a citizen." ' " *Luedemann*, 222 Ill. 2d at 550 (quoting *Florida v. Bostick*, 501 U.S. 429, 434 (1991), quoting *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968)). Q.P.'s liberty was undoubtedly restrained when he was handcuffed and placed in the backseat of a police patrol car. No rational trier of fact could find otherwise.

¶ 22                                  II. Preventing Apprehension on Other Charges

¶ 23    Q.P. contends that, as a matter of logic, he could not have had the intent to prevent his apprehension when he had already been apprehended. The State counters that although Q.P. had been apprehended on suspicion of vehicular burglary, he nevertheless had the intent of preventing his further apprehension on the outstanding warrant.

¶ 24    In making its argument, the State relies exclusively on *Smith*, 337 Ill. App. 3d 819. In that case, the defendant was subjected to a traffic stop. Suspicious that the defendant might have drugs in her mouth, a police officer instructed her to open her mouth. The defendant then swallowed the substance in her mouth. The appellate court affirmed the defendant's conviction for obstruction of justice.

- 4 -

¶ 25 While the *Smith* court did comment that it "reject[ed] any implication in *Miller* that it is impossible for a person who has been apprehended on one charge to destroy evidence in an attempt to prevent his apprehension on another charge," it is not clear that this is the precise basis for that court's affirmation. *Smith*, 337 Ill. App. 3d at 823. The court held the issue of apprehension was irrelevant, because even if the defendant had already been apprehended, she could still have been convicted under the "obstruction of prosecution" option in the obstruction of justice statute. *Id*. at 825.

> "Destroying evidence would appear to prevent apprehension up until the time of apprehension; after that time, destroying evidence would appear to obstruct prosecution. The precise moment at which apprehension occurs, however, is not relevant to any issue, at least not in this case. The same intent that would prevent apprehension would obstruct prosecution." *Id*. at 824.

This theory of interchangeability between the "prevention of apprehension" option and the "obstruction of prosecution" option appears to be the primary basis for the court's holding. *Smith* is thus not directly applicable to the case at hand.[1]

¶ 26 We find that for the purposes of the obstruction of justice statute, a person already apprehended cannot act with the intent to prevent his own apprehension on other charges. The plain meaning of "apprehension" or "seizure" warrants this outcome: one who is presently seized by the police cannot be seized again.

¶ 27 To accept the State's construction of the obstruction of justice statute would be to read additional language into that statute. The specific intent contemplated in the statute is simply the "intent to prevent the apprehension" of a person (720 ILCS 5/31-4(a) (West 2012)), not an intent to prevent *further* or *continued* apprehension. To interpret the obstruction of justice statute as encompassing the latter intent would violate our supreme court's directive that "nothing should be taken by intendment or implication beyond the obvious or literal meaning of the statute." *Laubscher*, 183 Ill. 2d at 337.

¶ 28 Q.P. had already been apprehended when he first furnished a false name and date of birth to Irving. No rational trier of fact could find otherwise. Because Q.P. was already apprehended, he was incapable of having the specific intent charged in the delinquency petition: the intent to prevent his own apprehension.

¶ 29                                                    CONCLUSION
¶ 30 The judgment of the circuit court of Peoria County is reversed.

¶ 31 Reversed.

¶ 32 JUSTICE HOLDRIDGE, dissenting.

¶ 33 I respectfully dissent. As the majority notes, "apprehension" means a " 'seizure, taking, or arrest of a person *on a criminal charge*.' " (Emphasis added.) *People v. Miller*, 253 Ill. App. 3d 1032, 1036 (1993) (quoting Black's Law Dictionary 101 (6th ed. 1990)). Under this definition,

---

[1]In the present case, the State did not charge Q.P. with obstruction of prosecution. The State does not argue on appeal that evidence of obstruction of prosecution would be sufficient to sustain a conviction for prevention of apprehension.

one is "apprehended" when he is seized or arrested in connection with a particular criminal charge or offense. Unlike "seizure" or "detention," which simply denotes that one's liberty is restrained in some manner (see *People v. Luedemann*, 222 Ill. 2d 530, 550 (2006)), "apprehension" is by definition connected to a particular criminal charge or offense. Thus, a defendant may act to evade "apprehension" on one criminal charge even after he has been apprehended, seized, or detained on another charge.

¶ 34      That is precisely what happened in this case. The defendant was initially seized by the police because he was suspected of committing a vehicle burglary. He initially provided a false name to the police. Later, while he was being questioned at the police station, the defendant misspelled his real name. Detective Stinson testified that the defendant admitted that he had provided a false name "because he knew he had a warrant." Viewing this evidence in the light most favorable to the State (as we must), a rational trier of fact could have found that the defendant knowingly furnished false information with the intent to prevent his "apprehension" on the outstanding warrant.

¶ 35      In concluding otherwise, the majority equates "apprehension" with "seizure." See *supra* ¶ 20. In the majority's view, a defendant is "apprehended" whenever he is seized for any reason. *Id.* Applying this expansive definition, the majority concludes that "a person already apprehended cannot act with the intent to prevent his own apprehension on other charges" because "one who is presently seized by the police cannot be seized again." *Supra* ¶ 26. Our appellate court has already rejected this understanding of "apprehension" for purposes of the obstruction statute. See *People v. Smith*, 337 Ill. App. 3d 819, 823 (2003) ("[w]e reject any implication *** that it is impossible for a person who has been apprehended on one charge to destroy evidence in an attempt to prevent his apprehension on another charge"). That makes perfect sense, in my view, because "the established, plain and ordinary meaning of 'apprehension' is a seizure, taking, or arrest of a person *on a criminal charge*" (emphasis added and internal quotation marks omitted) (*Miller*, 253 Ill. App. 3d at 1036), not merely the seizure of a person *tout court*. As noted, unlike a "seizure," an "apprehension" is by definition intrinsically connected to a particular criminal charge.

¶ 36      Accordingly, in my view, the trial court correctly ruled that the defendant in this case acted with the intent to prevent his apprehension on the outstanding warrant. In reaching this conclusion, I am not "reading additional language" into the obstruction statute or violating our supreme court's directive that "nothing should be taken by intendment or implication beyond the obvious or literal meaning of the statute." *People v. Laubscher*, 183 Ill. 2d 330, 337 (1998). See *supra* ¶ 27. Rather, I am merely enforcing the obvious, literal meaning of the statute by applying the established, plain and ordinary meaning of the statutory term "apprehension." See *Miller*, 253 Ill. App. 3d at 1036.