NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2025 IL App (4th) 240922-U

NO. 4-24-0922

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
July 16, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | McLean County |
| STEVEN O. AVERY, | ) | No. 23CF751 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | J. Jason Chambers, |
| | ) | Judge Presiding. |

JUSTICE CAVANAGH delivered the judgment of the court.
Presiding Justice Harris and Justice Knecht concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The appellate court affirmed in part and reversed in part, finding (1) the State
failed to prove defendant guilty of the offense of resisting a peace officer as
charged and (2) the trial court's preliminary inquiry into defendant's *pro se*
posttrial claims of ineffective assistance of counsel was sufficient.

¶ 2    Defendant, Steven O. Avery, was convicted by a jury of (1) home invasion (720

ILCS 5/19-6(a)(2) (West 2022)), (2) unlawful possession of a controlled substance (720 ILCS

570/402(c) (West 2022)), and (3) resisting a peace officer (720 ILCS 5/31-1)(a) (West 2022)).

On appeal, he argues his conviction for resisting a peace officer should be reversed because

(1) the State did not prove him guilty beyond a reasonable doubt and (2) the jury was given an

improper instruction. Additionally, he argues he is entitled to a new preliminary inquiry pursuant

to *People v. Krankel*, 102 Ill. 2d 181 (1984), because (1) the trial court failed to inquire into all

of his ineffective assistance allegations and (2) he did not knowingly waive his right to *Krankel*

counsel. We affirm in part and reverse in part.

¶ 3                                   I. BACKGROUND

¶ 4          In July 2023, defendant was charged by information with (1) home invasion for knowingly and without authority entering the home of Alejandro Alvarez and causing him injury by biting his shoulder and thigh and scratching his chest (count I), (2) unlawful possession of a controlled substance for possessing less than 15 grams of cocaine (count II), and (3) resisting a peace officer for knowingly resisting his arrest by police officer Bryan McCall by "physically struggling" with McCall and "attempting to pull his arms from the grasp" of McCall (count III). Defendant was subsequently indicted by a grand jury on counts I and II. The matter proceeded to a jury trial in December 2023.

¶ 5          At trial, Alvarez testified that on July 21, 2023, he was sitting in his home with several other guests. He witnessed defendant and another male attempting to kick down his rear door into the kitchen. Alvarez went to the living room and retrieved a lamp as a weapon. When he returned to the kitchen, defendant was there, and the two engaged in a physical altercation. The trial court admitted several photographs depicting injuries to Alvarez's leg, neck, and hands, as well as damage to his door.

¶ 6          Officer McCall testified he arrived at Alvarez's house after the incident. McCall observed several minor injuries to Alvarez's body. He also observed damage to the rear door. McCall stated he spoke with defendant by phone the day after the incident. According to McCall, defendant stated he "blacked out" and "went into a rage" after entering Alvarez's home. McCall stated he later observed defendant driving and initiated a traffic stop. During the traffic stop, McCall observed defendant "digging into his pocket" and ordered him to step out of his vehicle. When McCall attempted to place defendant in handcuffs, he said defendant refused, and when he

was trying to pull defendant's arms to the back of his body, defendant tried to pull them to the front of his body. McCall observed defendant making a throwing motion with his right hand. McCall recovered the object defendant threw and described it as a plastic bag containing a "white, rocky or chunky substance."

¶ 7 On cross-examination, McCall admitted he never told defendant to place his hands behind his back. McCall stated he observed defendant "reaching for something" and instructed him "to stop reaching." When defendant did not stop, McCall attempted to "control him."

¶ 8 The trial court admitted three videos. The first video was from McCall's body camera, showing his phone conversation with defendant. The second and third videos showed McCall's traffic stop and defendant's subsequent arrest. The videos of defendant's arrest from McCall's body worn camera and police vehicle dash camera showed McCall approached defendant, who was seated in the driver's seat, and asked him to "hop out [of] the vehicle." Right after defendant began opening his driver's side door, McCall told defendant twice to "stop reaching around." Defendant denied he was "reaching around" and started to exit the vehicle. As defendant exited, McCall told defendant to "pull [his] right hand out," which was located in or near defendant's right-side pants pocket, but McCall's view of defendant's right arm appears obstructed by defendant's body. After defendant fully exited the vehicle, McCall grabbed defendant's left arm, began to take control of defendant's right arm, and stated, "Move your right hand," and "What is going on with your right hand?" McCall gained control of both of defendant's arms and held them behind defendant's back and stated, "That crack you just threw on the ground." From this point, defendant's arms stayed behind his back for the remainder of the encounter. McCall informed an unknown individual nearby to "stay back" and instructed

defendant twice to place his arms behind his back. McCall told defendant not to move and threatened that he would be tased should he move. Defendant complied.

¶ 9        Forensic chemist Martin Palomo testified he analyzed the substance recovered during defendant's arrest. Palomo stated the total weight of the substance, which contained cocaine, weighed 0.161 grams and 0.1 grams.

¶ 10       The State rested.

¶ 11       Defendant moved for directed verdicts as to counts I and III, which the trial court denied. Defendant rested.

¶ 12       The jury returned guilty verdicts on all three counts.

¶ 13       Following the verdicts, defendant, while still represented by counsel, filed several *pro se* motions, arguing (1) he suffered a due-process violation by failing to poll the jury, (2) counsel provided ineffective assistance regarding a speedy-trial violation, (3) the trial court should vacate the verdict or hold a new trial because Alvarez was under the influence of drugs during his testimony, (4) the court should "dismiss all charges on the grounds of ineffective counsel" and he should be allowed to proceed *pro se* as a "sovereign citizen," (5) all the charges should be dismissed, citing the "Bill of Rights" and asking for continuances, (6) all the charges should be dismissed pursuant to the sixth amendment (U.S. Const., amend. VI), and (7) the court should vacate the verdicts on the basis of the superseding indictments.

¶ 14       In January 2024, defendant, through counsel, filed a motion for a judgment of acquittal notwithstanding the verdict or for a new trial. He argued he had not been proved guilty beyond a reasonable doubt and that various cumulative errors deprived him of due process and the right to a fair trial.

¶ 15       In February 2024, at counsel's request, the matter was continued to permit him to

research the issue of discretionary consecutive sentencing and to review a prior plea agreement regarding a petition to revoke, for which defendant also faced sentencing.

¶ 16　　　　In March 2024, defendant's trial counsel had left the public defender's office, and defendant requested to proceed *pro se*. The trial court denied defendant's request, appointed new counsel, and continued the matter to allow counsel to speak with defendant.

¶ 17　　　　Defendant appeared before the court in April 2024 and again requested to represent himself. The trial court admonished defendant and permitted him to proceed *pro se*.

¶ 18　　　　In May 2024, defendant filed more *pro se* motions, arguing (1) his appointed counsel violated his constitutional rights by not providing discovery to him and (2) counsel provided ineffective assistance regarding discovery, speedy trial, and the superseding indictment.

¶ 19　　　　On May 31, 2024, the trial court stated it would consider all of the posttrial motions filed in the case both by defendant's trial counsel and by defendant himself. The court began the proceeding by conducting a preliminary *Krankel* inquiry for defendant's ineffective assistance of counsel claims.

¶ 20　　　　Defendant advanced numerous arguments for why his trial counsel rendered ineffective assistance, including the following: (1) counsel had requested a continuance that defendant did not acquiesce to because the State had failed to timely tender discovery materials; (2) counsel had agreed to continuances that exceeded 30 days and were not both in writing or supported by affidavit; (3) counsel had not provided him with all of the discovery materials; (4) counsel never arranged meetings to discuss trial strategy with him and did not investigate or interview any witnesses; (5) counsel had failed to investigate whether the police, not defendant, had kicked down Alvarez's door; (6) counsel had failed to challenge either McCall's or Alvarez's testimonies with evidence the police had broken the door; (7) counsel had failed to

challenge McCall's testimony at trial that he had perjured himself before the grand jury by stating he had a video confession of defendant; (8) counsel had failed to object to the State's continuance at the beginning of the trial to secure Alvarez's testimony; (9) counsel had failed to challenge the State for prosecutorial misconduct when it permitted Alvarez to testify while under the influence of drugs; (10) counsel had failed to intervene when the trial court would not let defendant address the court while represented by counsel, which violated his first amendment rights (U.S. Const., amend. I); (11) counsel had a conflict of interest when he continued to represent defendant despite defendant filing a complaint with the Attorney Registration and Disciplinary Commission (ARDC) and threatening to file a federal lawsuit against him; (12) counsel was "aiding and abetting" the State, as evidenced by his failure to file any motions; (13) counsel had failed to poll the jury following its verdict; (14) counsel had failed to pursue dismissal of the case because the superseding indictment was improper; (15) counsel had told defendant after cross-examining McCall that he did not want to make McCall "look bad on the stand because he looked like he was fresh out the military and new to the police force[,] and the jury would have been bias[ed] against him, [be]cause the jurors have family and friends in the police force"; and (16) counsel had told defendant he "should have just taken the [four-year] deal" the State had offered him prior to trial.

¶ 21    The trial court noted it could not ask defendant's trial counsel any questions because not only had he left the McLean County Public Defender's Office, but he was also practicing in a different state. The court described each of defendant's arguments as either "conclusory," "misleading," or "legally immaterial." The court stated, "Some of [defendant's claims] don't bring forth colorable claims of ineffective assistance of counsel or [are related] to trial strategy." Specifically, the court noted defendant's claim about granting the State's

- 6 -

continuance to secure Alvarez's testimony was a continuance for one day. The court noted defendant's trial counsel challenged Alvarez's testimony and whether he was intoxicated through an offer of proof prior to trial. The court concluded each of defendant's claims were "either misleading, conclusory, legally immaterial, [did not] bring[ ] forth colorable claims of ineffective assistance of counsel or pertain[ed] to trial strategy" and denied the *pro se* claims.

¶ 22        The trial court then stated it would consider appointing new counsel for defendant to assist with the remainder of his claims. When asked if he would like new counsel, defendant stated, "Yes, if they're going to adopt. If not, no." The court said it could not promise new counsel would adopt all of defendant's arguments and asked if he was prepared to proceed with the remainder of his posttrial motions, to which defendant stated he was prepared to move forward. Defendant then argued the remainder of his posttrial motions, all of which the court denied.

¶ 23        The matter proceeded immediately to sentencing. The trial court sentenced defendant to concurrent terms of 10 years' imprisonment for home invasion and 5 years' imprisonment for unlawful possession of a controlled substance. The court also entered a conviction for resisting a peace officer.

¶ 24        This appeal followed.

¶ 25                                II. ANALYSIS

¶ 26        On appeal, defendant argues his conviction for resisting a peace officer should be reversed because (1) the State did not prove him guilty beyond a reasonable doubt and (2) the jury was given an improper instruction. He also argues he is entitled to a new *Krankel* hearing because (1) the trial court failed to inquire into all of his ineffective assistance allegations and (2) he did not knowingly waive his right to *Krankel* counsel. We address each claim in turn.

¶ 27              A. Claims Regarding Conviction for Resisting a Peace Officer

¶ 28        Defendant argues the State failed to prove him guilty beyond a reasonable doubt of resisting a peace officer because (1) he did not knowingly commit an act of resistance and (2) any act of resistance he committed did not materially impede Officer McCall from performing any authorized act.

¶ 29        Defendant's first argument pertains to the sufficiency of the evidence for his conviction of resisting a peace officer. When examining the sufficiency of the evidence, we must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis in original.) *People v. Collins*, 106 Ill. 2d 237, 261 (1985). The trier of fact has the responsibility to assess the witnesses' credibility, weigh their testimony, resolve inconsistencies and conflicts in the evidence, and draw reasonable inferences from the evidence. *People v. Sutherland*, 223 Ill. 2d 187, 242 (2006). We will not reverse a criminal conviction based on insufficient evidence unless the evidence is so unreasonable, improbable, or unsatisfactory that it creates a reasonable doubt of the defendant's guilt. *People v. Murray*, 2019 IL 123289, ¶ 19.

¶ 30        For resisting or obstructing a peace officer, the State was required to prove (1) McCall was a peace officer, (2) defendant knew McCall was a peace officer, and (3) defendant knowingly resisted or obstructed McCall's performance of an authorized act within his official capacity. 720 ILCS 5/31-1(a) (West 2022). Defendant does not challenge the sufficiency of the evidence for the first two elements. Therefore, we limit our analysis to whether he knowingly committed an act of resistance. In support of his argument, defendant cites *People v. Ostrowski*, 394 Ill. App. 3d 82 (2009), and *People v. Miller*, 253 Ill. App. 3d 1032 (1993).

¶ 31    In *Ostrowski*, 394 Ill. App. 3d at 98, two police officers approached the defendant—who was intoxicated—from behind and attempted to place him under arrest. As one of the officers told the defendant he was under arrest, the defendant began pulling away from the officers. *Id.* It took officers "three to four minutes" to arrest the defendant. *Id.* The appellate court noted it may have taken a "minute or two" for the defendant to comprehend "what was happening" because of his intoxication. *Id.* However, the court found the evidence for conviction was sufficient where the defendant had been told he was under arrest and continued to walk away from officers and, ultimately, " 'wrestled' " or " 'put up a fight' " with the officers to avoid arrest, "even if only for a short period of time." *Id.* at 98-99.

¶ 32    In *Miller*, 253 Ill. App. 3d at 1033, the defendant was charged with obstruction of justice for furnishing a false name to a police officer to obstruct his " 'apprehension.' " The appellate court noted the State was required to prove the essential elements of the offense as set out in the charging instrument. *Id.* at 1036. The court, citing the ordinary meaning of apprehension as a "seizure, taking, or arrest of a person on a criminal charge," noted the defendant had already been placed under arrest at the time he furnished a false name to the officer. (Internal quotation marks omitted.) *Id.* Therefore, because the State had failed to prove an essential element of the offense as charged, the defendant's conviction was reversed.

¶ 33    When analogizing *Ostrowski*, defendant notes McCall never told him he was under arrest or to put his hands behind his back. He also notes the total time between McCall exiting his police vehicle to placing him under arrest was approximately 45 seconds. When analogizing *Miller*, defendant argues the State had charged him with resisting arrest on the basis of pulling his arms away from McCall. However, he contends the physical act of pulling his arms away was not an attempt to resist arrest but to throw the bag of cocaine he was holding. Thus, he

- 9 -

contends, the State cannot use his conduct of throwing the cocaine as the basis for resisting or obstructing arrest. Defendant further notes, once he was placed in handcuffs by McCall, he was compliant.

¶ 34 The State responds by noting the larger context of the incident at issue. First, the State notes McCall had already spoken with defendant over the phone, wherein defendant had admitted to most of the conduct forming the basis for the home invasion charge. The State then argues McCall, upon seeing defendant the following day, initiated the traffic stop to effectuate the arrest of defendant for the suspected home invasion. The State contends McCall gave defendant a lawful order to stop reaching in his pockets and step out of his vehicle. Instead of complying, the State argues, defendant, by throwing the small bag of cocaine, pulled his arms in the opposite direction of McCall, who was attempting to arrest him.

¶ 35 As we stated earlier, a person who "knowingly" resists or obstructs the performance of a peace officer of any authorized act commits the crime of resisting a peace officer. 720 ILCS 5/31-1(a) (West 2022). In this case, the authorized act, as alleged in the charging instrument, was McCall's "arrest" of defendant. The words " 'you are under arrest' " do not have to be explicitly uttered by an officer to show knowledge on behalf of a defendant. *People v. Borders*, 2020 IL App (2d) 180324, ¶ 56. Rather, "the intention to arrest must be communicated, and [a] defendant's understanding of that intent is a factor to be considered." (Internal quotation marks omitted.) *Id.* " 'The test must not be what the defendant *** thought, but what a reasonable man, innocent of any crime, would have thought had he been in the defendant's shoes.' " *Id.* (quoting *People v. Howlett*, 1 Ill. App. 3d 906, 910 (1971), quoting *Hicks v. United States*, 382 F. 2d 158, 161 (D.C. Cir. 1967)); see 720 ILCS 5/4-5 (West 2022) (stating knowledge can include awareness of the substantial probability a fact exits or that

- 10 -

specific conduct is practically certain to produce a stated result).

¶ 36    As our supreme court has explained, the charging instrument must "state[ ] the name of the accused, the name, date and place of the offense, cite[ ] the statutory provision alleged to have been violated and set forth in the language of the statute the nature and elements of the offense charged." *People v. Simpkins*, 48 Ill. 2d 106, 111 (1971); see *People v. Walker*, 7 Ill. 2d 158, 161 (1955) ("[T]he allegation must be proved as alleged."). Here, the charging instrument alleged defendant "knowingly resisted his arrest *** by physically struggling with Officer McCall and attempting to pull his arms from the grasp of Officer McCall." As such, the State was required to "prove the essential elements of the charging instrument as alleged and without variance." *Miller*, 253 Ill. App. 3d at 1035-36. Thus, the State was required to prove defendant either physically struggled or pulled his arms away from McCall's grasp to knowingly resist his arrest.

¶ 37    The evidence showed McCall requested defendant exit his vehicle, which he began to do. As defendant exited his vehicle, McCall ordered defendant to "stop reaching around" and began to take control of defendant's arms while directing his concerns to what defendant's right arm was doing. McCall observed defendant throw the bag of cocaine and subsequently effectuated an arrest without issue. At trial, McCall testified he lawfully ordered defendant to stop reaching and because he did not stop reaching, McCall attempted to "control [defendant]."

¶ 38    Defendant's conduct plausibly defied McCall's lawful orders to stop reaching when defendant was still in his vehicle. When defendant exited the vehicle, McCall ordered defendant to "move his right arm," which, in a light most favorable to the State, we can infer pertained to defendant concealing his right hand from McCall's view. This inference is

reasonable because McCall immediately followed his nebulous order for defendant to move his right arm by questioning out loud what defendant was doing with his right arm. However, defying a lawful order by failing to stop reaching when inside his vehicle or not moving his right arm once outside the vehicle were not the basis for defendant's charge of resisting a peace officer. Rather, defendant was charged with resisting a peace officer by "physically struggling" with McCall and "attempting to pull his arms from the grasp" of McCall. It was these alleged failures by defendant, which were not proved beyond a reasonable doubt, that presumably led McCall to arrest defendant.

¶ 39　　　　The requirement that the State prove an essential element of an offense as charged and without variance "is not a mere technicality; it is founded on the constitutional safeguard against double jeopardy." *Id.* at 1036. Because the State has failed to prove defendant guilty of the offense as charged, we are required to reverse his conviction and sentence for resisting a peace officer. *Id.* at 1036-37. Because we are reversing defendant's conviction on these grounds, we need not address defendant's remaining arguments pertaining to whether his conduct materially impeded McCall or whether the jury instructions for this charge were proper.

¶ 40　　　　　　　　B. Claims Regarding Preliminary *Krankel* Inquiry

¶ 41　　　　Next, defendant argues the trial court's preliminary *Krankel* inquiry was inadequate because (1) the court's inquiry failed to sufficiently inquire into the factual basis of his ineffective assistance claims and (2) his waiver of posttrial counsel generally did not amount to a waiver of *Krankel* counsel. The State contends the court's inquiry into defendant's ineffective assistance claims was sufficient.

¶ 42　　　　A *pro se* posttrial claim alleging ineffective assistance of counsel is governed by the common law procedure developed by our supreme court in *Krankel* and its progeny. *People*

*v. Roddis*, 2020 IL 124352, ¶ 34. "The procedure encourages the trial court to fully address these claims and thereby narrow the issues to be addressed on appeal." *Id.* Under this procedure, the court does not automatically appoint new counsel when a defendant alleges ineffective assistance of counsel; rather, the court first examines the factual basis of the defendant's claim. *Id.* ¶ 35. "Specifically, the trial court must conduct an adequate inquiry ***, that is, inquiry sufficient to determine the factual basis of the claim." (Internal quotation marks omitted.) *People v. Ayres*, 2017 IL 120071, ¶ 11. In doing so, the court considers the merits of the defendant's allegations in their entirety. *Roddis*, 2020 IL 124352, ¶ 61.

¶ 43     If the trial court determines the claim lacks merit or pertains only to matters of trial strategy, the court need not appoint new counsel and may deny the defendant's *pro se* claim. *Id.* ¶ 35. "However, if the allegations show possible neglect of the case, new counsel should be appointed." *Id.* This permits new counsel to independently evaluate the defendant's claim and avoid a conflict of interest trial counsel would otherwise have, and new counsel would represent the defendant at a hearing on the *pro se* ineffective assistance of counsel claim. *Id.* ¶ 36. "The issue of whether the trial court properly conducted a preliminary *Krankel* inquiry presents a legal question that we review *de novo*." *Id.* ¶ 33.

¶ 44     Regarding the trial court's factual inquiry into his ineffective assistance claims, defendant argues the court's inquiry was rushed and superficial. Defendant cites *People v. McLaurin*, 2012 IL App (1st) 102943, in support. In *McLaurin*, the defendant was convicted of first degree murder. *Id.* ¶ 33. Following his conviction, the defendant alleged his trial counsel was ineffective for failing to investigate the case and subpoena an occurrence witness. *Id.* ¶ 34. Counsel informed the trial court he had spoken with the witness, who lived out of state, and that the witness would appear for trial. *Id.* Counsel did not, however, subpoena the witness. *Id.* The

court concluded the failure of the witness to appear for trial did not render counsel's investigation inadequate or his services ineffective. *Id.* The appellate court disagreed, concluding the record did not show counsel's efforts to secure the occurrence witness and determined it was unable to evaluate the defendant's ineffective assistance claims because the preliminary *Krankel* inquiry was incomplete. *Id.* ¶ 52. The court remanded the matter solely for the trial court to ask the defendant's trial counsel about his efforts to investigate the occurrence witness and secure his testimony at trial. *Id.* ¶ 53.

¶ 45    Defendant specifically points to the following examples to show the trial court failed to adequately ask him about the factual basis for his ineffective assistance claims: (1) his trial counsel performed ineffectively in retaliation for defendant filing an ARDC complaint against him, (2) whether counsel had investigated a police raid at Alvarez's home that caused damage to Alvarez's door prior to the home invasion, (3) the extent of counsel's meetings with defendant to review discovery and why defendant believed such evidence was exculpatory, (4) why he believed counsel failed to impeach a State's witness, and (5) why evidence should have been suppressed.

¶ 46    The preliminary *Krankel* inquiry encourages trial courts to fully address *pro se* ineffective assistance claims to narrow the issues to be addressed on appeal. *Roddis*, 2020 IL 124352 ¶ 34. In doing so, the court is permitted to question a defendant to assess his claims. *People v. Jolly*, 2014 IL 117142, ¶ 30. The court is also "permitted to make its determination based on its knowledge of defense counsel's performance at trial and the insufficiency of the defendant's allegations." *Ayres*, 2017 IL 120071, ¶ 12. Thus, the court's preliminary inquiry considers "the factual and legal basis, if any, of a defendant's posttrial claims of ineffective assistance of his trial counsel." *People v. Harkey*, 2025 IL App (4th) 230523, ¶ 73.

¶ 47  Based on our review of the record, we find the trial court's preliminary inquiry sufficient. Defendant's first example alleged his trial counsel rendered ineffective assistance as retaliation because he had filed a complaint with the ARDC. This claim, like some of defendant's other claims, is not only conspiratorial and vague but undermined by counsel's performance as shown in the record. Trial counsel vigorously challenged evidence and cross-examined witnesses at trial, including the State's primary witness, Alvarez. For defendant to claim his trial counsel performed incompetently generally, so as to retaliate against defendant, is simply unfounded and unexplained. It is also insufficient to warrant further investigation.

¶ 48  Defendant's next example pertains to whether counsel had investigated if the police had raided Alvarez's home prior to the home invasion, which he claimed was the actual cause of the damage to Alvarez's door. Relevant to defendant's case, home invasion required the State prove (1) defendant was not a peace officer acting in the line of duty, (2) defendant had entered Alvarez's home knowingly and without authority, (3) when he entered Alvarez's home, he had reason to know one or more persons was present, and (4) once inside, he intentionally caused injury to Alvarez. 720 ILCS 5/19-6(a)(2) (West 2022). The record shows defendant does not dispute the elements above. Rather, he appears to believe forcible entry or breaking into Alvarez's home was an element of the offense of home invasion and evidence the police damaged Alvarez's door would have been exculpatory. However, forcibly entry is not an element of the offense of home invasion, which makes defendant's claim meritless. Therefore, the allegation is insufficient to require further investigation. See *Material Service Corp. v. Department of Revenue*, 98 Ill. 2d 382, 387 (1983) (stating a reviewing court may sustain the judgment of a trial court "upon any ground warranted, regardless of whether it was relied on by the trial court and regardless of whether the reason given by the trial court was correct").

¶ 49　　　　Defendant's third example pertains to his access to discovery materials. However, "a defendant does not have a constitutional right to read discovery materials and an attorney's decision as to whether to provide his or her client with such materials is a matter of trial strategy and is within counsel's discretion." *People v. Savage*, 361 Ill. App. 3d 750, 757 (2005). Because this issue fits squarely within the realm of trial strategy, it also required no further investigation.

¶ 50　　　　The remainder of defendant's examples are not specific and do not correlate with a specific claim defendant raised before the trial court. It is simply unclear, on appeal, what defendant means when he refers to counsel's failure to impeach a State's witness or what evidence should have been suppressed. As a reviewing court, we are

> "entitled to have the issues clearly defined and supported by pertinent authority and cohesive arguments; [we are] not merely a repository into which an appellant may 'dump the burden of argument and research,' nor is it the obligation of this court to act as an advocate or seek error in the record." *U.S. Bank v. Lindsey*, 397 Ill. App. 3d 437, 459 (2009) (quoting *Obert v. Saville*, 253 Ill. App. 3d 677, 682 (1993)).

We will not "research the issues on the appellant's behalf." *Gakuba v. Kurtz*, 2015 IL App (2d) 140252, ¶ 19. Likewise, we will not "formulate an argument for defendant out of whole cloth." *People v. Inman*, 2023 IL App (4th) 230864, ¶ 13. Accordingly, we find the trial court's preliminary *Krankel* inquiry adequate.

¶ 51　　　　Defendant next contends that although he requested to proceed *pro se* for posttrial proceedings, his general waiver of counsel did not mean he waived the opportunity to have *Krankel* counsel appointed. Defendant argues it is unclear from the record whether the trial court's inquiry was in fact a preliminary *Krankel* inquiry or the *Krankel* hearing itself. Defendant

contends if it was the latter, he was entitled to the opportunity to have counsel represent him at the *Krankel* hearing.

¶ 52 A preliminary *Krankel* inquiry "serves the narrow purpose of allowing the trial court to decide whether to appoint independent counsel to argue a defendant's *pro se* posttrial ineffective assistance claims." *People v. Patrick*, 2011 IL 111666, ¶ 39. Therefore, there are only two possible outcomes when a court conducts the inquiry: "(1) the court appoints new counsel who should then conduct an independent evaluation of the defendant's ineffective assistance claims and take whatever action counsel thinks would be appropriate or (2) the court does not appoint new counsel and posttrial matters proceed as in any other case." *Harkey*, 2025 IL App (4th) 230523, ¶ 72.

¶ 53 The record shows the trial court's inquiry was a preliminary *Krankel* inquiry. The hearing was predicated on *pro se* ineffective assistance allegations. The court stated prior to the hearing the State was not permitted to participate. At the conclusion of the *Krankel* portion of the proceeding, the court reiterated it would consider appointing "new counsel" for defendant if any of the *pro se* claims warranted further investigation. Because the court found defendant's *pro se* claims either lacked merit or were matters of trial strategy, no appointment of counsel was necessary. *Roddis*, 2020 IL 124352, ¶ 35.

¶ 54                                  III. CONCLUSION

¶ 55 For the reasons stated, we reverse the trial court's judgment as to the conviction and sentence for resisting a peace officer and affirm on the remaining issues.

¶ 56 Affirmed in part and reversed in part.