NOTICE
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2025 IL App (4th) 240110-U

NO. 4-24-0110

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
January 13, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | McDonough County |
| SKYLER C. LERCH, | ) | No. 22CF129 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Nigel D. Graham, |
| | ) | Judge Presiding. |

JUSTICE GRISCHOW delivered the judgment of the court.
Justices Doherty and DeArmond concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The appellate court reversed, finding the trial court's response to the jury's question during deliberations was erroneous and deprived defendant of a fair trial on the aggravated battery charge.

¶ 2    Following a jury trial, defendant, Skyler C. Lerch, was convicted of resisting a peace officer (720 ILCS 5/31-1(a) (West 2022)), criminal damage to government supported property (*id.* §21-1.01(a)(1)), aggravated battery (*id.* § 12-3.05(d)(4)(i)), domestic battery (*id.* § 12-3.2(a)(1)), and aggravated assault with a deadly weapon (*id.* § 12-2(c)(1)). Defendant appeals, arguing the trial court erred when it did not answer the jury's question regarding what evidence could be considered in the aggravated battery charge. For the reasons below, we reverse the aggravated battery conviction and remand for retrial on that charge.

¶ 3                                    I. BACKGROUND

¶ 4                              A. The Arrest and Charges

¶ 5            On September 12, 2022, Officers Kenneth Bergren and Eric Cremer from the Macomb Police Department were dispatched to a home after Neisha Shaw called 911, claiming her boyfriend held a knife to her neck and threatened her and her family with physical harm. The following description of events is based upon the evidence presented at trial, which is not challenged on appeal. Upon the officers' arrival to the home, Shaw answered the door, with defendant standing closely behind. The officers ordered defendant out of the house and to get to his knees. As Officer Bergren attempted to secure defendant's left wrist with handcuffs, defendant began to slam his head on the ground. Both officers pulled defendant onto the grass to stop him from slamming his head on the sidewalk. Defendant buried his hands underneath him, grabbed onto his pants, and flexed his muscles to keep the officers from putting his hands behind his back. The officers were unable to secure defendant with handcuffs. When the officers disengaged to draw their tasers, defendant ran away to the rear of the residence. The officers pursed defendant, who was ultimately tased and fell to the ground.

¶ 6            After another struggle, defendant was handcuffed. While being escorted to the squad car, defendant asked the officers to put his dog inside his house. The officers declined, and defendant began to physically resist again. As the officers attempted to place defendant in the squad car, he raised his feet up and kicked the rear side of the driver's door, which caused dents in the squad car. The officers then held defendant against the side of the squad car until additional officers arrived. Defendant leaned back as Officer Bergren leaned forward to keep him against the car. As defendant leaned back, he turned toward Officer Bergren, who then felt something wet on his face. Officer Bergren wiped away what he thought to be defendant's spit. The full audio and

some obstructed video of the encounter was captured on the officers' body worn cameras. The videos were admitted into evidence. However, due to the angles of the officers' body worn cameras, no footage was captured of defendant spitting on the officer.

¶ 7 Additional officers arrived on the scene, and defendant was placed in the squad car. Once in the car, defendant slammed his head into the plastic partition between the front and back seats until he began to bleed. Defendant was transported to the jail, where medics awaited to assist. At the jail, defendant stated, "I promise I won't spit ol' boy," to Officer Bergren. Officer Bergren then went to the hospital to be evaluated for exposure to bodily fluids.

¶ 8 On September 13, 2022, the State charged defendant by information with resisting a peace officer (720 ILCS 5/31-1(a) (West 2022)), criminal damage to government supported property (*id.* § 21-1.01(a)(1)), aggravated battery (*id.* § 12-3.05(d)(4)(i)), domestic battery (*id.* § 12-3.2(a)(1)), criminal damage to property (*id.* § 21-1(a)(1)), and aggravated assault with a deadly weapon (*id.* § 12-2(c)(1)).

¶ 9 B. The Jury Trial and Instructions

¶ 10 Defendant's two-day jury trial commenced on July 17, 2023. The State's evidence included, *inter alia*, the testimony of several police officers, Shaw, and a witness describing the cost of damages to the squad car. Defendant did not present any evidence. After the parties rested and following closing arguments, the trial court instructed the jury on circumstantial evidence and aggravated battery as follows:

> "A person acts knowingly with regard to the nature or
> attendant circumstances of his conduct when he is consciously
> aware that his conduct is of that nature or if those circumstances
> exist. ***

A person commits the offense of aggravated battery when he knowingly and by any means makes physical contact of an insulting or provoking nature with another person. And, in doing so, he knows the individual harmed is a peace officer who at the time is engaged in the execution of official duties.

To sustain the charge of aggravated battery, the State must prove the following propositions. First proposition, that the Defendant knowingly made physical contact of an insulting or provoking nature with Kenneth Bergren. And, second proposition, that the Defendant knew Kenneth Bergren to be a peace officer. And, third proposition, that the Defendant knew that Kenneth Bergren was engaged in the execution of official duties."

¶ 11 During deliberations, the jury sent out two notes to the trial court. In one note, the jury requested to see the order of protection, and court stated it could not grant that request. The other note read: "Is the aggravated battery just spitting or can it be general/overall physical contact of insulting/provoking nature?"

¶ 12 The trial court requested input from the attorneys. The State was unsure of how to answer the question. Defense counsel, while agreeing the jury instruction referred to conduct of an insulting or provoking nature, noted the specific charge in this case was for spitting. Therefore, defense counsel argued the jury needed a specific answer to clarify the alleged spitting was the conduct to be considered for the aggravated battery charge. Defense counsel argued the failure to do so, essentially changing the type of contact that the jury could consider, was "moving the

goalposts." The State asked that the conduct not be delineated, and the jury should be able to make a finding based on the evidence observed. After a recess, the court explained:

> "THE COURT: After reviewing authority, the answer frankly is unclear; therefore, I think the safest route is to give the jury the following answer. You are to consider the evidence and testimony produced at trial to determine whether or not you believe that the propositions in the instruction for aggravated battery have been proven beyond a reasonable doubt.
>
> Your request to examine the Order of Protection file cannot be granted. You are limited to the evidence that was presented at trial.
>
> So that is the note that I intend to send back."

¶ 13 At this time, defense counsel reiterated his argument that the jury should consider the aggravated battery charge in the context of the alleged spitting, and "it would not be appropriate to allow [the jury] to find anything else." The trial court acknowledged defense counsel's position, but explained, "I also want the jury to rely on the instructions as much as possible. So this is referring, essentially, back to their instructions."

¶ 14 After receiving the note responding to their questions, the jury returned a verdict finding defendant guilty on five of the six counts. Defendant was found not guilty of criminal damage to property but guilty on all the other charges, including: aggravated battery (720 ILCS 5/12-3.05 (d)(4)(i) (West 2022)), criminal damage to government supported property (*id.* § 21-1.01(a)(1)), domestic battery (*id.* § 12-3.2(a)(1)), resisting a peace officer (*id.* § 31-1(a)), and aggravated assault (*id.* § 12-2(c)(1)).

¶ 15        On August 28, 2023, defendant filed a motion for judgment notwithstanding the verdict. Defendant argued the jury's verdict on the aggravated battery charge was erroneous and requested the trial court find him not guilty. The same day, defendant filed a motion for a new trial. The court denied both motions, reasoning it was inappropriate to speculate as to why the jury asked the questions. After instructing the jury to consider the agreed instruction on aggravated battery, the jury determined the elements had been proven beyond a reasonable doubt. The court concluded the jury was properly advised to proceed with deliberations within the parameters they had been given.

¶ 16        On October 6, 2023, defendant was sentenced to eight years in prison. Defendant's motion to reconsider sentence was denied.

¶ 17        This appeal followed.

¶ 18                                      II. ANALYSIS

¶ 19        The sole issue claimed on appeal is that the trial court failed to provide a clarifying answer to the jury's question regarding the behavior formulating the basis for the aggravated battery charge. Defendant argues he was denied a fair trial when the court did not provide clarification in its response to a question posed by the jury. Defendant contends the jury's question, asking if "the aggravated battery [is] just the spitting or can it be general/overall physical contact of insulting/provoking nature," indicated the jury's "manifest confusion" about the law, which required a clarifying answer from the court. By essentially referring the jury to prior instructions on considering the evidence, defendant argues the court "left the door open" for the jury to convict defendant on acts separately charged for resisting a police officer and for criminal damage to government supported property. Further, defendant claims the court's failure to clarify this matter allowed him to be charged under a new theory that he did not have a chance to address at trial.

¶ 20　　　　　When presented with a question from the jury, the trial court generally has a duty to instruct the jury if the question posed is explicit or requests clarification "on a point of law arising from facts about which there is doubt or confusion." *People v. Childs*, 159 Ill. 2d 217, 228-29 (1994). The general rule regarding clarification of jury instructions is as follows:

> "If jurors differ as to the instructions they should come into court and have them repeated, or if they wish more information as to the law they should request it of the court, and it has been held that it is not only the right but the duty of the court to reinstruct on any question of law arising from the facts on which the jury say they are in doubt, and on which they ask further instructions. Where the jury make their difficulties explicit, the judge should clear them away with concrete accuracy; and where the question asked is not clear, it is the duty of the court to seek clarification." (Internal quotation marks omitted.) *People v. Shannon*, 206 Ill. App. 3d 310, 316-17 (1990) (quoting *People v. Harmon*, 104 Ill. App. 2d 294, 301 (1968)).

¶ 21　　　　　"However, the general rule is tempered by the rule that the trial court may properly exercise its discretion and decline to answer the jury's inquiries where the given jury instructions are readily understandable and sufficiently explain the relevant law." *Id.* at 317. Whether the trial court's answer to juror questions is legally correct is reviewed *de novo*. *People v. Leach*, 2011 IL App (1st) 090339, ¶ 16.

¶ 22　　　　　Defendant argues the trial court should have answered the jury's question in relation to the aggravated battery charge by directing it to only consider evidence of defendant's

spitting. After our careful review, we agree.

¶ 23　　　　During jury deliberations, the relevant jury instruction pertaining to aggravated battery, agreed to by both parties before trial, was presented to the jury as follows:

"To sustain the charge of aggravated battery, the State must prove the following propositions:

*First Proposition*: That the defendant knowingly made physical contact of an insulting of provoking nature with Kenneth Bergren; and

*Second Proposition*: That the defendant knew Kenneth Bergren to be a peace officer; and

*Third proposition*: That the defendant knew that Kenneth was engaged in the execution of official duties.

If you find from your consideration of all the evidence that each one of these propositions has been proved beyond a reasonable doubt, you should find the defendant guilty.

If you find from your consideration of all the evidence that any one of these propositions has not been proved beyond a reasonable doubt, you should find the defendant not guilty."

¶ 24　　　　It is true that "[w]hether the instructions were proper and/or agreed to by defense counsel is not the determinative inquiry. The issue is whether the instructions were clearly understandable to the jury." *Childs*, 159 Ill. 2d at 231. The failure to answer or the giving of a response which provides no answer to the particular question of law posed has been held to be

prejudicial error. *Id.* at 229. When a jury makes explicit its difficulties, the trial court should resolve them with specificity and accuracy. *People v. Caballero*, 102 Ill. 2d 23, 42 (1984).

¶ 25 Here, the question was not only explicit, it also requested clarification on a point of law arising from the facts about which there was doubt or confusion. The jury sought clarification on what behavior formulated the basis of the aggravated battery charge. The jury wanted to know if the insulting and provoking conduct was just defendant spitting on the officer or the overall aggressive behavior of defendant. The only testimony, evidence, and argument at trial for the aggravated battery charge was the spitting. Further, it is clear from both the original and amended information the State was relying on defendant's spitting on the officer as the only basis for the aggravated battery charge. Both versions include: "in that said defendant spit into Officer Bergren's face, causing saliva to strike Officer Bergren's right eye and face." It is equally clear the jury's question sought to clarify exactly that point—was the aggravated battery "just the spitting" or the rest of defendant's behavior? The State elected how to charge defendant, and they chose to rely solely on the spitting for the aggravated battery charge. The jury's confusion is understandable, given that neither the statement of the case nor the instruction made such a distinction. Jurors are entitled to have their inquiries answered. Defendant's proposed instruction was insufficient, as the jury had not been informed defendant's aggravated battery charge was based solely on the spitting. The trial court could have easily clarified the confusion by reciting the language of count I of the amended information.

¶ 26 It was noted the attorneys participated in responding to the jury's questions. However, no written response from either attorney was given. As this court has held, when the trial court receives a question from the jury, "both parties should provide a written draft of the specific response they want the trial court to give to the jury, just as the parties provide written

proposed jury instructions during the jury instruction conference." *People v. Brown*, 319 Ill. App. 3d 89, 101 (2001). The attorneys for both defendant and the State should have followed best practices by preparing a specific written response they wanted the trial court to give to the jury to assist the court in fashioning an appropriate response to the question. See *People v. Kinney*, 294 Ill. App. 3d 903, 909 (1998) (Knecht, J. specially concurring).

¶ 27        Under these facts, we find the trial court had a duty to specifically answer the jury's question, and it failed to do so. This failure was prejudicial because it left the door open for the jury to convict defendant on an aggravated battery theory that he was never given the chance to address. As such, defendant is entitled to a new trial on the aggravated battery charge.

¶ 28                                III. CONCLUSION

¶ 29        Although defendant requests that his conviction on all counts be reversed and remanded for a new trial, his claim of error on appeal focused exclusively on the jury's question regarding the aggravated battery instruction. We have concluded the trial court's failure to answer the jury's question with clarification requires defendant's conviction for aggravated battery be reversed and the cause remanded for a new trial on that count. The behavior that formed the basis of the other convictions, while arising from the same incident, was separate and independent from the aggravated battery charge. As such, we remand for a new trial only on the aggravated battery charge (count I).

¶ 30        Reversed and remanded.