2025 IL App (1st) 241518

SECOND DIVISION
December 16, 2025

No. 1-24-1518

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 23400213001 |
| | ) | |
| ADRIAN DELGADO, | ) | Honorable |
| | ) | Teresa Molina-Gonzalez, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE D.B. WALKER delivered the judgment of the court, with opinion.
Justice Ellis concurred in the judgment and opinion.
Presiding Justice Van Tine concurred in part and dissented in part, with opinion.

**OPINION**

¶ 1    Defendant Adrian Delgado appeals his conviction of resisting a peace officer after a jury

trial. On appeal, defendant contends that his conviction should be reversed where the evidence was

insufficient to prove his guilt beyond a reasonable doubt. Alternatively, defendant contends that

he is entitled to a new trial where (1) the trial court failed to comply with Illinois Supreme Court

Rule 431(b) (eff. July 1, 2012) when it asked jurors only whether they disagreed with each

principle of law, and (2) the trial court's response to the jury's question during deliberations

improperly indicated that the jury should consider incidents for which defendant was not charged.

For the following reasons, we reverse.

¶ 2                                  I. BACKGROUND

¶ 3    On May 13, 2023, defendant was stopped by a Melrose Park police officer while driving a

vehicle. There were three passengers in the vehicle with defendant. Defendant was subsequently

charged via misdemeanor complaint with resisting a police officer and illegal possession of cannabis. The complaint alleged that defendant

> "knowingly obstructed the performance of Officer Santillan #51 of an authorized act within his official capacity, being the arrest of [defendant], knowing Officer Santillan #51 to be a peace officer engaged in the execution of his official duties, in that he pulled away and stiffened his right arm and refused to be handcuffed in an effort to defeat the arrest."

Defendant was charged under section 31-1(a) of the Criminal Code of 2012 (Code) (720 ILCS 5/31-1(a) (West 2022)) for resisting a peace officer and under section 11-502.15(a) of the Illinois Vehicle Code (625 ILCS 5/11-502.15(a) (West 2022)) for possession of adult use cannabis in a motor vehicle.

¶ 4      Defendant's trial began on May 13, 2024. During *voir dire*, the trial court questioned potential jurors regarding the following propositions: (1) "the defendant is presumed to be innocent until the jury determines after deliberation that the defendant is guilty beyond a reasonable doubt," (2) "the State has the burden of proving the defendant guilty beyond a reasonable doubt," and (3) "the defendant does not have to present any evidence at all and may rely on the presumption of innocence." After each statement, the trial court asked, "Does anyone disagree with this rule of law?" No one raised their hand. The court continued, stating that "the defendant does not have to testify. Would any of you hold the fact that the defendant did not testify at trial against the defendant?" Again, no one raised their hand. Twelve jurors and two alternates were selected.

¶ 5      At trial, Officer Santillan[1]  testified that around 2 a.m. on May 13, 2023, he was working patrol in a marked police vehicle, dressed in full uniform. While on patrol, he responded to a

---

[1]Officer Santillan's first name is not provided in the record.

request from Officer Richter[2] for additional officers to assist in a traffic stop. When he arrived at the scene, he noticed that Officer Richter had stopped a vehicle. While Richter performed work on his computer, Santillan approached the stopped vehicle by himself. He observed four occupants, including the driver, in the vehicle. He identified defendant in court as the driver.

¶ 6 As he approached the vehicle, Santillan noticed "clown masks" on the headrests. Santillan testified that he first spoke with the front passenger and asked for his identification. In complying with the request, the passenger opened the glove compartment. Santillan observed "a knotted plastic baggie containing cannabis" in the glove compartment.

¶ 7 Santillan asked the front passenger to exit the vehicle, and he complied. He then asked the right rear passenger for identification. Santillan testified that this passenger, even though it was 2 a.m., "had on sunglasses and a surgical mask. And from my experience, I believe he was trying to hide and conceal his identity." When he asked this passenger to step out of the vehicle, the passenger "became argumentative and refused to step out." The rear passenger eventually exited the vehicle. Santillan told him, based on his behavior, that he "was going to be temporarily detained," and then Santillan handcuffed him "with the front right passenger together to avoid any type of flight or them taking off running from us." They were handcuffed "hand in hand" so that each had one free hand. Santillan testified that he "patted down" the passengers but did not find anything.

¶ 8 Santillan testified that the passengers were "very disrespectful" towards him, and he believed the situation was going to become "hands on." He therefore requested additional police units as he attempted to handcuff the passengers.

_____

[2] Officer Richter's first name is not provided in the record.

¶ 9    After detaining the two passengers, Santillan spoke to defendant. He asked defendant "to step out of the vehicle, which he cooperated. And I told him to stand next to the other individuals that I had handcuffed. And at the time I tried to detain him as well in handcuffing him." Santillan testified that defendant refused to be handcuffed to the other individuals. He described defendant's demeanor as "aggressive, angry, disrespectful, [and] rude." As he tried to grab defendant's wrist to handcuff him, defendant "was pulling away" and he "stiffened his body." Santillan stated that he "had a hard time doing so until the backup arrived, [and] that's when I was able to handcuff him." His encounter with defendant was "quick," taking place "under a minute."

¶ 10    When asked how defendant's actions impeded his investigation, Santillan responded that there were four occupants in the vehicle and he could not "keep eyes on all of them. And dealing with [defendant] at the time was kind of difficult when he's trying to interfere with my performance to try to conduct a thorough investigation." He explained that he only carried two pairs of handcuffs and he "was just detaining. They were not going to be—at the time, I didn't know if they were going to be in custody so I temporarily detained them until I conducted my investigation." Santillan used his "whole body" in attempting to pull back defendant's arm to handcuff him.

¶ 11    Santillan testified that he suspected the small plastic bag in the glove compartment contained cannabis because it "was a green leafy substance" that he had prior experience observing while working as an officer. He testified that cannabis must be stored in a child and odor proof sealed bag or container, and the small plastic bag was not an appropriate container. He also smelled a "strong odor of alcoholic beverage as well as burnt cannabis" emanating from the vehicle.

¶ 12    On cross-examination, Santillan stated that he did not field test the substance in the small plastic bag, nor was it sent to a laboratory for testing. He stated that when additional officers

arrived at the scene, two of the passengers were handcuffed, and he "was still trying to handcuff" defendant. Defense counsel asked Santillan, "So after this alleged incident occurred, you placed the passengers of the car into the squad car, correct?" Santillan answered, "Yeah. After, yeah." When asked if "they were under arrest at that point," Santillan responded, "Yeah."

¶ 13    After Santillan testified, the State rested its case. Defendant filed a motion for a directed finding, which the trial court denied. Defense counsel also sought to introduce a photograph of defendant and a photograph of Michael Boehmer, who was the passenger handcuffed to defendant. The photograph of Boehmer showed injuries he suffered during the incident. After hearing the parties' arguments, the trial court allowed the photographs.

¶ 14    In his case in chief, defendant called Melrose Park police officer William Bianchi. Bianchi testified that on May 13, 2023, he responded to a call for assistance. When he arrived, he observed four people outside of a vehicle, and three of them were handcuffed to one another. Defendant was "on the end of the chain" handcuffed to a man named Michael. Bianchi saw a "tussle" between defendant and Santillan. Defendant "was actively engaging with Officer Santillan." Bianchi had described defendant in a report as "a large in size male Hispanic."

¶ 15    Bianchi testified that he observed defendant "pushing and shoving with the left hand," and he tried to raise his right hand as officers "unhandcuff[ed] him from the safety link." Defendant then "reengages; to which, he's taken to the ground and handcuffed to end the scenario." Bianchi did not know who unhandcuffed defendant, but it was not him. He testified that defendant posed an "active threat at the time, so getting him free from the link and handcuffed behind his back and brought to a squad [was] our main objective at that time." He acknowledged that after defendant was unhandcuffed, he struck defendant in the chest with an open palm and brought him to the ground. He testified that this action was necessary to "end the threat," as defendant was "a big

individual." Since a number of officers were at the scene, they were able to handcuff defendant and his passengers individually. Bianchi could not recall whether he completed a response to resistance report on his use of force.

¶ 16    Lieutenant John Schillinger, Bianchi's supervisor, also testified. He stated that he recalled approving a response to resistance report Bianchi completed after the incident. During a sidebar, defense counsel argued that a discovery violation occurred because they received no such report. Counsel requested that the trial court instruct the jury that it could draw an adverse inference against the State based on the absence of the document. The trial court granted the request, and the defense rested.

¶ 17    In closing argument, the prosecutor told the jury that defendant committed the offense of resisting arrest where he "knowingly resisted the performance by pulling away and stiffening his right arm refusing to submit to being handcuffed in an effort to prevent Officer Santillan from arresting the defendant." The prosecutor remarked that the four occupants of the stopped vehicle "were asked to step out of the car after marijuana was found." Defendant "got out of the car. You know, he complied with everything, but he did not comply with being arrested. His compliance up and to that point does not matter. This—and refusing to be placed under arrest was when the resisting occurred." The prosecutor also mentioned Bianchi's testimony regarding a "second event" involving defendant. He emphasized, however, that "[t]he charge of resisting a police officer is against Officer Santillan. It is not against Officer Bianchi."

¶ 18    Defense counsel argued in closing that the charge against defendant for resisting an officer was "a means to justify" the use of force against Boehmer. He argued that Santillan felt disrespected and used force against defendant. He further argued that despite the ability of the

officers to conduct a field test of the substance in the small plastic bag, it was never tested or confirmed to be cannabis.

¶ 19 In rebuttal, the prosecutor argued that defendant "resisted the lawful order of a fully marked officer of the law to submit to being arrested. He knew what he was doing, and he knew that that officer was acting as an officer."

¶ 20 Regarding the resisting a peace officer charge, the jury was instructed that the State must prove (1) "[t]hat Officer Santillian [*sic*] was a peace officer," (2) that defendant "knew Officer Santillian [*sic*] was a peace officer," and (3) that defendant "knowingly resisted the performance by pulling away and stiffening his right arm refusing to submit to being handcuffed in an effort to prevent Officer Santillian [*sic*] from arresting the defendant."

¶ 21 During deliberations, the jury sent a note which stated: "Are we to consider the first incident of alleged resisting arrest (defendant resisting being connected to Michael by Santillian [*sic*]); the second act of resistance (defendant resisting after being uncuffed from Michael) or both?" The court believed that it was "very clear that the charge is against his resisting of Officer Santillian [*sic*]." Therefore, the trial court told the jury simply "to consider all of the evidence that was presented during the trial."

¶ 22 The jury found defendant guilty of resisting a peace officer but not guilty of possession of adult use cannabis in a motor vehicle. Defendant filed a motion for a new trial which the trial court denied. He was subsequently sentenced to 24 months of probation and 100 hours of community service, and he was required to obtain a GED.

¶ 23 Defendant filed this appeal.

¶ 24                                     II. ANALYSIS

¶ 25    Defendant first contends that the evidence at trial was insufficient to convict him of resisting arrest under section 31-1 of the Code. On a claim of insufficient evidence, we determine whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Harris*, 2018 IL 121932, ¶ 26. We will reverse a conviction only if the evidence is so unreasonable, improbable, or unsatisfactory that there exists a reasonable doubt of defendant's guilt. *Id.*

¶ 26    The State contends that to sustain a conviction for resisting a peace officer pursuant to section 31-1(a), it had to prove that "defendant resisted or obstructed someone he knew was a peace officer, and that this obstruction or resistance actually impeded or hindered the officer" from conducting an authorized act. The State argues that, when viewed in the light most favorable to the State, the evidence at trial established beyond a reasonable doubt that defendant committed the offense of resisting a peace officer.

¶ 27    Defendant, however, contends that he could not be arrested for resisting arrest under section 31-1 unless there was an underlying offense for which he was initially subject to arrest. He argues that the State failed to prove beyond a reasonable doubt an underlying offense for which he was initially subject to arrest.

¶ 28    Resolution of this issue requires us to construe section 31-1. Our primary objective when interpreting a statute is to ascertain and give effect to the legislature's intent. *People v. Clark*, 2019 IL 122891, ¶ 18. The most reliable indicator of legislative intent is the language of the statute, given its plain and ordinary meaning. *Id.* ¶ 20. The construction of a statute presents a question of law that we review *de novo*. *People v. Smith*, 2016 IL 119659, ¶ 15.

¶ 29    Section 31-1 pertains to the offense of resisting or obstructing a peace officer. We note that this section was recently amended, and the amended provision went into effect on January 1, 2023,

approximately four months before the offense in this case occurred. See Pub. Act 101-652, § 10-215 (eff. Jan. 1, 2023) (amending 720 ILCS 5/31-1). As amended, section 31-1(a) provides that "[a] person who knowingly: (1) resists arrest, or (2) obstructs the performance by one known to the person to be a peace officer *** of any authorized act within his or her official capacity[,] commits a Class A misdemeanor." 720 ILCS 5/31-1(a)(1)-(2) (West 2022). The amendment also added subsection (d) which provides that "[a] person shall not be subject to arrest for resisting arrest under this Section unless there is an underlying offense for which the person was initially subject to arrest." *Id.* § 31-1(d).

¶ 30 Pursuant to the plain language of section 31-1(a), there are two distinct ways a person can commit the offense of resisting or obstructing a peace officer: by knowingly resisting arrest or by knowingly obstructing the performance by a peace officer of an authorized act. The legislature thus intended to separate the specified offense of resisting arrest from the broader offense of obstructing performance of an authorized act.

¶ 31 Here, the misdemeanor complaint charged defendant with resisting a peace officer under section "31-1-A" of the Code. The complaint, however, did not indicate whether he was being charged under subsection (a)(1) or (a)(2). It is well-established that it is the State's burden to "prove the essential elements of the charging instrument as alleged and without variance." *People v. Miller*, 253 Ill. App. 3d 1032, 1036 (1993). Therefore, in order to review whether the State met its burden, we must first ascertain the essential elements of the charge against defendant. To do so, we read the charging instrument "as a whole, and where a statute is cited in a count, the statute and count are to be read together." *People v. Hoffman*, 146 Ill. App. 3d 823, 833 (1986).

¶ 32 The misdemeanor complaint alleged that defendant

"knowingly obstructed the performance of Officer Santillan #51 of an authorized act within his official capacity, *being the arrest of [defendant,]* knowing Officer Santillan #51 to be a peace officer engaged in the execution of his official duties, in that he pulled away and stiffened his right arm and refused to be handcuffed *in an effort to defeat his arrest*." (Emphases added.)

¶ 33 Although the complaint referred to defendant's obstruction of an authorized act, the authorized act specified was the arrest of defendant. Reading the complaint together with the provisions of section 31-1(a), we find that defendant was charged with resisting arrest under subsection (a)(1). Accordingly, for defendant to be convicted of resisting arrest under this provision, the State must establish that he knowingly resisted arrest. See 720 ILCS 5/31-1(a)(1) (West 2022).

¶ 34 Our supreme court has recognized that "not every encounter between the police and a private citizen results in a seizure." *People v. Luedemann*, 222 Ill. 2d 530, 544 (2006). Relevant here, under the limited exception set forth in *Terry v. Ohio*, 392 U.S. 1, 21-22 (1968), a police officer may detain a person even without probable cause to arrest. *People v. Wallace*, 2023 IL App (1st) 200917, ¶ 17. This exception permits an officer to briefly stop a person for temporary questioning if the "totality of the circumstances reasonably lead the officer to conclude that criminal activity may be afoot and the subject is armed and dangerous." *People v. Colyar*, 2013 IL 111835, ¶ 32. Neither party has challenged the validity of the traffic stop in this case. A routine traffic stop is more akin to a *Terry* investigative stop than a formal arrest. *People v. Jones*, 215 Ill. 2d 261, 270 (2005).

¶ 35 Moreover, if Santillan reasonably believed his safety was at risk during the investigative stop, it was reasonable for him to order defendant and his passengers to exit the vehicle and search

them for weapons, which he did. *Colyar*, 2013 IL 111835, ¶ 45. Although Santillan had handcuffed the passengers together after they stepped out of the vehicle, and attempted to place handcuffs on defendant, the act of handcuffing itself did not automatically transform an investigatory stop into a *de facto* arrest. *Id.* ¶ 46. An officer who reasonably suspects that his or her safety is in danger may take necessary measures to neutralize any threat of physical harm. *Id.* ¶ 45. In *Colyar*, our supreme court found that handcuffing was a reasonable and necessary precaution during a *Terry* stop where the officers were outnumbered, it was dusk, and they could reasonably suspect that the defendant or his passengers possessed or had access to weapons. *Id.* ¶ 47.

¶ 36    Similarly, Santillan testified that it was 2 a.m. when he approached defendant's vehicle and he was outnumbered four to one. He observed clown masks on the headrests. He also suspected that the rear passenger was trying to hide his identity because he wore sunglasses and a mask. When asked to exit the vehicle, the masked passenger was reluctant and "very disrespectful." Defendant, a large man, became "aggressive, angry, disrespectful, [and] rude" after exiting the vehicle. In his testimony, Bianchi referred to the handcuffing of defendant together with his passengers as a "*safety* link." Pursuant to *Colyar*, handcuffing was permitted as a reasonable and necessary safety precaution during an investigative stop.

¶ 37    Furthermore, Santillan never testified that he placed defendant under arrest before he tried to handcuff him. Rather, at the time of defendant's resistance, Santillan was merely trying to conduct an investigation pursuant to a traffic stop. Santillan agreed that defendant and his passengers were under arrest "*after* this alleged incident [of resistance] occurred." There is no evidence in the record contradicting Santillan's testimony.

¶ 38    The complaint charged defendant with resisting arrest under section 31-1(a) of the Code. Section 31-1(a)(1) specifically addresses the act of resisting arrest. Under the plain language of

section 31-1(a)(1), a person commits the offense if he or she knowingly "resists arrest." 720 ILCS 5/31-1(a)(1) (West 2022). In this case, defendant could not knowingly resist arrest if no evidence presented at trial supported that he was under arrest when he resisted Santillan. Since the evidence at trial failed to establish that defendant "knowingly resist[ed] arrest" under section 31-1(a)(1), we reverse his conviction. See *People v. Pearse*, 2017 IL 121072, ¶¶ 47, 51 (reversing the defendant's conviction where the evidence presented by the State failed to prove a violation of the statutory provision under which he was charged).

¶ 39    Due to our disposition of this issue, we need not address defendant's other claims on appeal.

¶ 40                               III. CONCLUSION

¶ 41    For the foregoing reasons, the judgment of the circuit court is reversed.

¶ 42    Reversed.

¶ 43    PRESIDING JUSTICE VAN TINE, concurring in part and dissenting in part:

¶ 44    I agree that we should reverse defendant's conviction but for different reasons than the majority. In my view, the evidence was sufficient to prove defendant guilty of the charged incident of resisting arrest. However, the trial court's response to the jury's question allowed the jury to find defendant guilty based on an *uncharged* instance of resisting arrest. Therefore, I would reverse and remand for a new trial.

¶ 45                       I. Response to the Jury's Question

¶ 46    Defendant maintains that the trial court's answer to the jury's question was erroneous. I agree.

¶ 47    During deliberations, the jury asked: "Are we to consider the first incident of alleged resisting arrest, parenthesis, defendant resisting being connected to Michael by Santillan; the

second act of resistance, defendant resisting after being uncuffed from Michael, or both?"[3] This question referred to two incidents that Santillan and Bianchi testified to separately. Santillan testified that, after he ordered defendant out of the vehicle and as he was attempting to handcuff defendant to Michael, defendant pulled away and stiffened his body. Shortly thereafter, Santillan handcuffed defendant's right arm to Michael. Bianchi testified that when he arrived on scene, defendant was already handcuffed to Michael. Then, as another officer "unhandcuff[ed] [defendant] from the safety link," Bianchi saw defendant "pushing and shoving with [his] left hand" and "trying to raise his right hand." After defendant was uncuffed, he "reengage[d]," so Bianchi struck him in the torso and re-cuffed him on the ground.

¶ 48    In response to the jury's question, the State argued that the criminal "complaint [was] against Officer Santillan, which would involve *** the first incident." Defendant proposed telling the jury that "defendant [wa]s only charged with resisting arrest against Officer Santillan." Defendant expressed concern that the jury might find him guilty of resisting during the second incident even though the complaint did not charge as much. The trial court instructed the jury, "You are to consider all of the evidence that was presented during the trial."

¶ 49    " 'Generally, a trial court must provide instruction when the jury has posed an explicit question or asked for clarification on a point of law *** showing doubt or confusion.' " *People v. Boston*, 2018 IL App (1st) 140369, ¶ 113 (quoting *People v. Averett*, 237 Ill. 2d 1, 24 (2010)). We review *de novo* the accuracy of a court's answer to a jury's question. *People v. Leach*, 2011 IL App (1st) 090339, ¶ 16.

---

[3]The jury's written question and the trial court's written answer are not in the record on appeal. We take the trial court's oral description of the jury's question and the court's answer from the reports of proceedings.

¶ 50    The jury's question sought clarification as to what act formed the basis of the resisting arrest charge: (1) the first incident in which Santillan handcuffed defendant to Michael, (2) the second incident in which officers uncuffed defendant from Michael and took him to the ground, or (3) both. Because the jury asked a specific question as to the law that formed the basis of the charge, the trial court should have given a specific answer. See *People v. Shannon*, 206 Ill. App. 3d 310, 316-17 (1990). It did not. Instead, the trial court instructed the jury to "consider all of the evidence that was presented during the trial." That instruction was error because it allowed the jury to find defendant guilty of an offense the State did not charge.

¶ 51    The criminal complaint charged only the first incident. It alleged that defendant "pulled away and stiffened his right arm and refused to be handcuffed in an effort to defeat the arrest" Santillan was attempting to make. That was the "first incident of alleged resisting arrest" to which the jury's note referred, "defendant resisting being connected to Michael by Santillan." The trial court could have answered the jury's question by reciting the complaint's language and explaining that the first incident, not the second, was the basis of the resisting arrest charge. At a minimum, the court could have directed the jury to the elements instruction that said the resisting charge was based on the allegation that defendant pulled away and stiffened his right arm, *i.e.*, the first incident.

¶ 52    But instead, the trial court's response said that the jury should consider *all* the evidence. "All the evidence" included "the second act of resistance, defendant resisting *after* being *un*cuffed from Michael." (Emphasis added). Yet the complaint did not allege anything about the second incident referenced by the jury.

¶ 53    A jury instruction that introduces an uncharged offense can constitute reversible error. *People v. McDonald*, 401 Ill. App. 3d 54, 61-62 (2010); see *People v. McCauley*, 2 Ill. App. 3d

734, 736 (1972) (the "natural result" of jury instructions based on uncharged crimes is prejudice to the defendant). That is because "a defendant may not be convicted of an offense he has not been charged with committing."[4] *People v. Kolton*, 219 Ill. 2d 353, 359 (2006). Here, the trial court's response to the jury's question allowed the jury to find defendant guilty of resisting arrest based on the second, uncharged incident, which was error.

¶ 54    Defendant's citation to *People v. Lerch*, 2025 IL App (4th) 240110-U, is persuasive. In that case, the State charged the defendant with aggravated battery (720 ILCS 5/12-3.05(d)(4)(i) (West 2022)) based on spitting on a police officer. *Lerch*, 2025 IL App (4th) 240110-U, ¶¶ 8, 25. During deliberations, the jury issued a note asking, " 'Is the aggravated battery just spitting or can it be general/overall physical contact of insulting/provoking nature?' " *Id.* ¶ 11. The jury was referring to evidence of other acts of resistance the defendant committed during his arrest, such as refusing to put his arms behind his back, running away, and kicking a police vehicle. *Id.* ¶¶ 5-7. The trial court responded, " 'You are to consider the evidence and testimony produced at trial to determine whether or not you believe that the propositions in the instruction for aggravated battery have been proven beyond a reasonable doubt.' " *Id.* ¶ 12. The jury found the defendant guilty of aggravated battery. *Id.* ¶ 14. Defendant appealed, challenging the trial court's answer to the jury's question. *Id.* ¶¶ 17, 19.

¶ 55    The Fourth District reversed and remanded for a new trial. *Id.* ¶¶ 27, 30. The court explained as follows:

---

[4]The exception to this rule is that a defendant may be convicted of an uncharged lesser-included offense. *People v. Kolton*, 219 Ill. 2d 353, 360 (2006). That exception does not apply here; resisting arrest is not a lesser-included offense of resisting arrest.

"The jury wanted to know if the insulting and provoking conduct was just defendant spitting on the officer or the overall aggressive behavior of defendant. The only testimony, evidence, and argument at trial for the aggravated battery charge was the spitting. Further, it is clear from both the original and amended information the State was relying on defendant's spitting on the officer as the only basis for the aggravated battery charge. Both versions include: 'in that said defendant spit into Officer Bergren's face, causing saliva to strike Officer Bergren's right eye and face.' It is equally clear the jury's question sought to clarify exactly that point—was the aggravated battery 'just the spitting' or the rest of defendant's behavior? The State elected how to charge defendant, and they chose to rely solely on the spitting for the aggravated battery charge. *** The trial court could have easily clarified the confusion by reciting the language of count I of the amended information." *Id.* ¶ 25.

I agree with this reasoning and find that it applies to this case.

¶ 56    In both *Lerch* and this case, the jury asked a specific question about what behavior formed the basis for the charge. In both cases, the trial court gave a generalized answer that "left the door open for the jury to convict defendant" based on an uncharged "theory that he was never given the chance to address." See *id.* ¶ 27. This case should have the same outcome as *Lerch*.

¶ 57    The double jeopardy clause of the United States Constitution (U.S. Const., amend. V) prohibits the State from receiving a second opportunity to try the case unless the first trial presented sufficient evidence to prove the defendant guilty. *People v. Sperry*, 2020 IL App (2d) 180296, ¶ 30; see *People v. Olivera*, 164 Ill. 2d 382, 393 (1995) (the double jeopardy clause forbids a second trial to give the State another opportunity to supply evidence that it failed to introduce in the first trial). As I explain below, I would find that the evidence was sufficient to prove defendant

- 16 -

guilty of resisting arrest as charged. Accordingly, I would reverse defendant's conviction based on the trial court's erroneous response to the jury's question and remand for a new trial.

¶ 58                                    II. Sufficiency of the Evidence

¶ 59    We review a challenge to the sufficiency of the evidence under a deferential standard in which we examine whether, after viewing the evidence in the light most favorable to the State, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Jones*, 376 Ill. App. 3d 372, 382 (2007) (citing *People v. Hall*, 194 Ill. 2d 305, 330 (2000)). We cannot overturn the jury's decision unless the evidence is so unreasonable, improbable, or unsatisfactory as to justify a reasonable doubt of the defendant's guilt. *People v. Campbell*, 146 Ill. 2d 363, 375 (1992).

¶ 60    Here, the State charged defendant under section 31-1(a) of the Criminal Code of 2012, which provides that a "person who knowingly: (1) resists arrest, or (2) obstructs the performance by one known to the person to be a peace officer *** of any authorized act within his or her official capacity commits a Class A misdemeanor." 720 ILCS 5/31-1(a) (West 2022). The criminal complaint alleged that defendant

> "knowingly obstructed the performance of Officer Santillan #51 of an authorized act within his official capacity, being the arrest of Adrian I. Delgado, knowing Officer Santillan #51 to be a peace officer engaged in the execution of his official duties, in that he pulled away and stiffened his right arm and refused to be handcuffed in an effort to defeat the arrest."

¶ 61    The complaint was not clear as to whether it charged resisting arrest under section 31-1(a)(1) or obstructing a peace officer under section 31-1(a)(2). However, the State indicated that it was proceeding on "resisting a peace officer," not obstructing a peace officer, and the jury instructions stated that defendant was charged with "[r]esisting," not obstructing. Therefore, I find

that defendant was charged with resisting arrest under section 31-1(a)(1). A person resists arrest when he or she commits "a physical act of resistance or obstruction, that is, a physical act that impedes, hinders, interrupts, prevents or delays the performance of the officer's duties, such as going limp, forcefully resisting arrest, or physically helping another party to avoid arrest." *People v. Haynes*, 408 Ill. App. 3d 684, 689-90 (2011).

¶ 62    The majority finds that the evidence did not establish that defendant was under arrest, so he could not have resisted arrest. I respectfully disagree. In my view, the evidence established that Santillan arrested defendant when he ordered defendant out of the vehicle and began handcuffing him to Michael. At that point, no reasonable person would have felt free to leave. That is the standard for determining whether an individual is under arrest. See *People v. Lopez*, 229 Ill. 2d 322, 346 (2008). " 'An arrest occurs when the circumstances are such that a reasonable person, innocent of any crime, would conclude that he was not free to leave.' " *Id.* (quoting *In re D.G.*, 144 Ill. 2d 404, 409 (1991)). This inquiry considers "all of the circumstances surrounding the encounter." (Internal quotation marks omitted.) *Kaupp v. Texas*, 538 U.S. 626, 629 (2003) (*per curiam*).

¶ 63    In this case, police had stopped the vehicle defendant was driving and called for backup. When Santillan arrived, he ordered the passengers out, handcuffed them together, and patted them down. Santillan then ordered defendant out of the vehicle and began handcuffing him to one of the passengers, Michael. At that point, a reasonable person in defendant's position would not have felt free to leave. I cannot imagine that a reasonable person would have thought that Santillan would allow them to lead a handcuffed chain of people away from the scene. Therefore, defendant was under arrest when Santillan was handcuffing him to Michael.

¶ 64    I acknowledge Santillan testified that he only intended to "temporarily detain" defendant and had not yet decided whether to arrest him. That testimony is inconsistent with the fact that Santillan signed the criminal complaint alleging that defendant attempted to "defeat [his] arrest." If Santillan did not think defendant was under arrest, then Santillan had no basis for charging defendant with resisting arrest.

¶ 65    In any event, Santillan's testimony does not decide whether defendant was under arrest. Santillan's intent is only one factor in that analysis. See *People v. Jackson*, 348 Ill. App. 3d 719, 728 (2004). Other factors include police restraining a person's freedom of movement by physical force or a show of authority. *Id.*; see *California v. Hodari D.*, 499 U.S. 621, 624 (1991) ("To constitute an arrest *** the mere grasping or application of physical force with lawful authority, whether or not it succeeded in subduing the arrestee, was sufficient."). Santillan made a show of authority by ordering defendant out of the vehicle and physically restraining him with handcuffs, which are "indicia of formal arrest." See *Jackson*, 348 Ill. App. 3d at 728. Santillan also summoned more officers to the scene, escalating the show of authority. See *id.* ("the number of police officers present" is a factor in determining whether someone was under arrest). It appears that Santillan did not tell defendant that he was under arrest, but Santillan also did not tell defendant he was free to leave or that he was being temporarily detained. See *id.* (whether the defendant was told he was free to leave or was told he was under arrest are factors bearing on whether he was under arrest). The ultimate question is whether a reasonable person in defendant's position would have felt free to leave. See *Lopez*, 229 Ill. 2d at 346. In this case, the answer to that question is no, so defendant was under arrest.

¶ 66    The majority cites *People v. Colyar*, 2013 IL 111835, to conclude that Santillan did not arrest defendant; rather, he handcuffed defendant for safety reasons while conducting an

investigatory stop under *Terry v. Ohio*, 392 U.S. 1 (1968). In *Colyar*, our supreme court found that handcuffing the defendant and his passengers did not convert a *Terry* stop into an arrest. *Colyar*, 2013 IL 111835, ¶ 46. Rather, handcuffing was a safety measure because the officers could "reasonably suspect that one or more of the three individuals in defendant's car possessed a gun or would be able to access a gun inside the vehicle if they were not secured by handcuffs." *Id.* ¶ 47. It is true that "when an officer has a reasonable suspicion during an investigatory stop that the individual may be *armed and dangerous*, the officer is permitted to take necessary measures to determine whether the person is armed and to neutralize any threat of physical harm." (Emphasis added.) *Id.* ¶ 45. But in this case, there was no evidence that anyone in defendant's vehicle was armed or dangerous. In fact, Santillan testified that he frisked the passengers and determined that they were *not* armed. So, Santillan's decision to handcuff defendant and his passengers could not have been a safety measure during a *Terry* stop. The only rational explanation for Santillan handcuffing defendant is that he was arresting defendant.

¶ 67    As to the second element of the charged offense, there was no dispute that defendant physically resisted arrest. Santillan testified that defendant pulled away and stiffened his body as Santillan tried to handcuff him. No witness denied that defendant physically resisted Santiallan's attempt to handcuff him. The evidence established that defendant was (1) under arrest and (2) physically resisted that arrest, so a reasonable jury could have found him guilty of resisting arrest under section 31-1(a)(1). See 720 ILCS 5/31-1(a)(1) (West 2022). Accordingly, I would find that the evidence sufficiently proved defendant's guilt.

¶ 68                                III. Rule 431(b)

¶ 69    Finally, I write separately to address a claim of error the majority does not consider. Defendant contends that the trial court violated Rule 431(b) because the court asked potential

jurors whether they "disagree[d]" with the Rule 431(b) principles, not whether they "understood and accepted" those principles.

¶ 70    Rule 431(b) requires the trial court to ask potential jurors whether they understand and accept four constitutional principles: (1) the defendant is presumed innocent, (2) the State must prove the defendant guilty beyond a reasonable doubt, (3) the defendant is not required to offer any evidence, and (4) if the defendant does not testify it cannot be held against him. Ill. S. Ct. R. 431(b) (eff. July 1, 2012). We review the trial court's compliance with Rule 431(b) *de novo*. *People v. Belknap*, 2014 IL 117094, ¶ 41.

¶ 71    The trial court violated Rule 431(b). For three of the four Rule 431(b) principles, the court asked only whether the potential jurors disagreed with that principle, not whether they understood and accepted it. When a court asks only whether the potential jurors disagree with the legal principles, it fails to comply with Rule 431(b). *People v. Wilmington*, 2013 IL 112938, ¶ 32. ("While it may be arguable that the court's asking for disagreement, and getting none, is equivalent to juror *acceptance* of the principles, the trial court's failure to ask jurors if they *understood* the four Rule 431(b) principles is error in and of itself." (Emphases in original.))

¶ 72    Defendant concedes that he forfeited this error because he did not object to the court's Rule 431(b) questioning and did not raise this issue in his posttrial motion. Nevertheless, defendant seeks plain error review. Defendant can seek only first-prong plain error review, under which he must demonstrate that the evidence was closely balanced. See *People v. Sebby*, 2017 IL 119445, ¶ 72. I would find that the evidence was not closely balanced for the reasons set forth above. The evidence established that Santillan arrested defendant and that defendant physically resisted that arrest.

¶ 73    Evidence is closely balanced when the parties present two plausible opposing accounts and no extrinsic evidence corroborates or contradicts either version such that the jury must resolve a credibility contest. *Id.* ¶ 63. That did not occur in this case. No witness disputed the officers' version of events and no witness denied that defendant resisted Santillan's attempt to handcuff him. Because defendant cannot establish that the evidence was closely balanced, I would find that the trial court's Rule 431(b) questioning did not constitute first-prong plain error.

*People v. Delgado*, 2025 IL App (1st) 241518

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 23400213001; the Hon. Teresa Molina-Gonzalez, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Douglas R. Hoff, and Sarah Free, of State Appellate Defender's Office, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Eileen O'Neill Burke, State's Attorney, of Chicago (John E. Nowak, Noah Montague, and Margaret A. Hillmann, Assistant State's Attorneys, of counsel), for the People. |